[No. 4458.      Decided April 19, 1904.]

A. E. NATHAN, *Appellant,* v. SPOKANE COUNTY *et al., Respondents.*[1]

TAXATION—EXPEDIENCY ÒF METHOD—DISCRETION OF LEGISLATURE. The power to impose and the method of collecting taxes, rest in the discretion of the legislature, and the expediency thereof will not be questioned by the courts.

SAME—MIGRATORY STOCK TAX—UNIFORMITY—DIFFERENT METHODS OF ASSESSMENT. The "migratory stock tax" (Laws 1899, p. 295, § 12) upon goods brought into the state after the time for as-

[1]Reported in 76 Pac. 521.

sessing property, to be sold in a place of business temporarily oc-
cupied, is not unconstitutional on account of making distinctions
as to the manner of assessments, since there is uniformity in the
rate and basis of valuation.

SAME — ASSESSMENT OF PROPERTY TAXED IN ANOTHER STATE.
Where property is otherwise taxable it is not exempt because it
may have been taxed for the same year in another state.

SAME—VALUATION—NO PROVISION FOR EQUALIZATION—NOTICE—
DUE PROCESS OF LAW—HEARING BEFORE ASSESSOR—REVIEW BY
COMMON LAW REMEDIES.    Laws 1899, p. 295, § 12, providing for a
tax upon stocks of goods temporarily brought into the state for
sale, is not unconstitutional as a taking of property without due
process of law, in that it fails to provide for notice of the tax, or
for any hearing before the board of equalization, since it is made
the duty of the owner to notify the taxing officers, and the law
provides for a hearing before the assessor, who acts in a judicial
capacity in fixing the valuation, and the common law remedies
may be invoked to review his decision.

SAME—PROVISO AUTHORIZING ABATEMENT OF PART OF TAX.  The
proviso added to the "migratory stock tax" law of 1899, authoriz-
ing an abatement or deduction from the next regular assessment
corresponding to the portion of the year that the goods were in
this state, is unconstitutional, since such discrimination is un-
equal, the property must be taxed in proportion to its value, and
no person can be released or discharged from any share of his
tax.

SAME—PARTIAL UNCONSTITUTIONALITY OF ACT NOT AFFECTING
OTHER PORTIONS.    The unconstitutionality of the proviso added
to the "migratory stock tax" law, authorizing an abatement or de-
duction of a portion of the tax, does not affect the validity of
other portions of the section, since the balance is distinct and sep-
arable and complete in itself.

Appeal from a judgment of the superior court for Spo-
kane county, Belt, J., entered May 24, 1902, upon sus-
taining a demurrer to the complaint, dismissing an action
to enjoin the collection of a tax.   Affirmed.

*Robertson, Miller & Rosenhaupt,* for appellant, con-
tended, *inter alia,* that a state cannot impose a business or
license tax heavier upon nonresidents than upon residents
doing the same business. *Ward v. Maryland,* 12 Wall.

418; *State v. Wiggin,* 64 N. H. 508; Cooley, Const. Lim., pp. 596-598.    There must be notice to the taxpayer. Blackwell, Tax Titles, § 397; Desty, Taxation, 597; *Kuntz v. Sumption,* 117 Ind. 1, 19 N. E. 474; *South Platte Land Co. v. Buffalo County,* 7 Neb. 254; *Patten v. Green,* 13 Cal. 330; Cooley, Const. Lim., 431.    And he must have the right to a hearing.    *Railroad Tax Cases,* 13 Fed. 722; Cooley, Taxation, pp. 52, 361, 364; *Stuart v. Palmer,* 74 N. Y. 183; *Hagar v. Reclamation District,* 111 U. S. 701; *Darling v. Gunn,* 50 Ill. 424.    Property not in the state at the time of the assessment cannot be taxed for the year.    *People v. Kohl,* 40 Cal. 127; *Wangler Bros. v. Black Hawk County,* 56 Iowa 384, 9 N. W. 314.

*Horace Kimball* and *Miles Poindexter,* for respondents.

PER CURIAM.—This is an action instituted in the superior court of Spokane county by A. E. Nathan, appellant and plaintiff below, against Spokane county, George Mudgett as county treasurer, and A. P. Williams, county assessor of such county, defendants and respondents.    The object of the suit is to enjoin the collection of $750 levied as taxes upon plaintiff's property for the year 1901.    The court below sustained a general demurrer to the complaint. The plaintiff elected to stand on his complaint.    The action was thereupon dismissed, and an appeal taken to this court.

The assignments of error present but the one question, whether the complaint states sufficient facts to entitle appellant to relief.    His brief in this court contains the following statement: "The action was presented in the court below, and is presented now to this court, to determine the constitutionality of § 12, Session Laws 1899, p. 295." The transcript discloses that appellant, in order to prevent distraint of his goods and merchandise, deposited

$750 in the hands of the county treasurer, which, by stipulation, stands in lieu of a levy, if the appellant shall be adjudged to pay the tax. The complaint, among other things, alleges, that on or about the 10th day of November, 1901, appellant, A. E. Nathan, brought a stock of goods and merchandise from the state of Montana to the city and county of Spokane; that the value placed on such stock by appellant was $8,000; that appellant, immediately upon his arrival in Spokane, commenced doing business as a merchant, under the style of A. E. Nathan & Co., and proceeded, in the regular and ordinary course of business, to dispose of his merchandise at a place of business in said city temporarily used for that purpose, without the intention, on the part of appellant, of permanently engaging in trade at such place; that on or about the 12th day of November, 1901, respondent A. P. Williams, the county assessor of Spokane county, by himself and deputies, came into the store of appellant and notified him that he (the assessor) would forthwith proceed to assess such stock of goods; that appellant then and there offered to show to said assessor the value of such stock, and that the same had been assessed, and taxes paid thereon, in Montana for the then current year (1901); that such assessor proceeded to assess such merchandise, and on the 12th day of November, 1901, the county treasurer, George Mudgett, came to appellant's said place of business and threatened to distrain appellant's goods, unless such tax were paid; that, in order to prevent such levy, appellant, under protest, deposited the sum of $750 in the hands of said Mudgett, not as county treasurer, but as a private individual, pending the final determination of this controversy, and that this has been done with the consent of the prosecuting attorney of Spokane county.

The complaint further alleges that the above statute, under which this tax levy was made, is unconstitutional for the following reasons: (1) the said enactment provides a different mode and manner of the assessment levied against the property of appellant, than is provided for other persons and property similarly situated; (2) that there is no provision made for any board of equalization, or other person, to hear and determine the matter as to the justness of such tax, and the value of the property sought to be assessed; (3) that it provides for a rebate to persons residing permanently in this state, and is a discrimination against persons temporarily residing therein; (4) that this law is special in its character, and unequal in its application.

The provisions of the statute attacked by appellant are as follows:

"Whenever any person, firm or corporation shall, subsequent to the first day of March of any year, bring or send into any county any stock of goods or merchandise to be sold or disposed of in a place of business temporarily occupied for their sale, without the intention of engaging in permanent trade in such place, the owner, consignee or person in charge of the said goods or merchandise shall immediately notify the county assessor, and thereupon the assessor shall at once proceed to value the said stock of goods and merchandise at its true value, and upon such valuation the said owner, consignee or person in charge shall pay to the collector of taxes a tax at the rate assessed for state, county and local purposes in the taxing district in the year then current. And it shall not be lawful to sell or dispose of any such goods or merchandise as aforesaid in such taxing district until the assessor shall have been so notified as aforesaid and the tax assessed thereon paid to the collector. Every person, firm or corporation bringing into any county of this state goods or merchandise after the first day of March shall be deemed subject to the provisions of this section: Pro-

vided, That all persons having paid the tax as herein pro-
vided for, shall at the time of the regular assessment next
succeeding said payment, be allowed by the county as-
sessor in making his assessment a deduction in a sum
equal to that part of the entire assessment of the previous
year as the number of days of the previous assessment
year he was not in such county bears to the whole of such
assessment year." Laws of 1899, p. 295, § 12; Pierce's
Code, § 8679; 3 Bal. Code, § 1740a.

Article 7, § 1, Constitution, State of Washington, pro-
vides: "All property in the state not exempt under the
laws of the United States, or under this constitution, shall
be taxed in proportion to its value, to be ascertained as
provided by law." The object and intent of the framers
of the constitution was, that all property not exempt by
virtue of the provisions of such instrument should bear
a tax in proportion to its value; that the listing, assess-
ment, levy, enforcement, and collection of taxes, subject
to certain limitations unnecessary to notice in this con-
nection, should be in the discretion of the legislature. The
expediency of such enactments, within the limitations
prescribed by this constitution, constitutes a subject-mat-
ter with which the courts will not intermeddle. The legis-
lature is a branch of our state government co-ordinate
with the executive and judicial. Each department is su-
preme within its proper sphere. The lawmaking power
is vested in the legislature, under the provisions of our
fundamental law.

Judge Cooley, in his able treatise on Constitutional
Limitations (5th ed.), p. 593, uses the following pertinent
language:

"The power to impose taxes is one so unlimited in force
and so searching in extent, that the courts scarcely ven-
ture to declare that it is subject to any restrictions what-
ever, except such as rest in the discretion of the authority
which exercises it. It reaches to every trade or occupa-

tion; to every object of industry, use, or enjoyment; to every species of possession; and it imposes a burden which, in case of failure to discharge it, may be followed by seizure and sale or confiscation of property."

Again, at page 645 of the same treatise, the learned jurist observes:

"What method shall be devised for the collection of a tax, the legislature must determine, subject only to such rules, limitations, and restraints as the constitution of the state may have imposed. Very summary methods are sanctioned by practice and precedent."

This court, in the case of *Johnston v. Whatcom County,* 27 Wash. 95, 67 Pac. 569, construed the above statutory provision as applying to persons, firms, or corporations bringing their goods and merchandise into this state from beyond its boundaries, after the first day of March, to be sold or disposed of in a place of business temporarily occupied for their sale, without the intention of engaging in permanent trade at such place; holding that it did not apply to merchants moving their goods from one county into another within the state, after the first day of March, when such goods had already been listed and assessed for taxes in the county of the situs of the property at that date for the then current year. It is true that the constitutionality of this statute was not considered in the above case; but the contention of appellant—that this enactment is unconstitutional because it "provides a different mode and manner of the assessment levied against the property of this appellant, than is provided for other persons and other property similarly situated"—is met by the decision of this court in *Wright v. Stinson,* 16 Wash. 368, 47 Pac. 761. We held in that case, that the "Migratory Stock Act" (Laws 1895, p. 105) was not unconstitutional on account of making distinctions as to the manner

of assessment and collection of taxes levied against the different kinds of personal property.

The case of *Kelley v. Rhoads,* 7 Wyo. 237, 51 Pac. 593, 39 L. R. A. 594, 75 Am. St. 904, was, in many of its features, similar to the case at bar. The court held, that the provision of the state constitution of Wyoming, requiring property to be uniformly assessed for taxation, does not mean that, in the case of the assessment of all kinds of taxable property, the same officers shall act, or that the proceedings touching the assessment shall be the same; that there is uniformity in the assessment, if the same basis of valuation is taken as to all property of like character; that, as long as the rate and method of valuation are the same as in case of other property, a statute may be enacted affecting the taxation of a peculiar class of property, to guard against its escape therefrom, without violating any constitutional provision. This case is also authority on the proposition presented in this controversy, that, where personal property is otherwise taxable in the state of Washington, it is not exempt from taxation because it may have been returned for taxation for the same year in another state. See, also, Cooley, Taxation (2nd ed.), 37, 219-221; *Coe v. Errol,* 116 U. S. 517, 524, 6 Sup. Ct. 475, 29 L. Ed. 715; exhaustive note, 62 Am. St. Rep. p. 448.

The appellant in his complaint alleges, that the tax in question was assessed and levied against his property after the time fixed by law for the equalization of taxes by the county board, and therefore the proceedings had in that behalf were invalid, because he had no opportunity, under the provisions of this statute, to have the valuation of his goods, as determined by the county assessor for the purposes of taxation, reviewed in any manner; that the law in question is also unconstitutional in this: it fails to

provide for the giving of notice to the owner of the property before the assessment and levy of the tax. In the case of *Kelley v. Rhoads, supra,* it would seem, from the opinion of the court, that the party assessed under the provisions of the Wyoming statute, before or after the annual levy, and feeling himself aggrieved, may subsequently appear before the county board, at either a regular or special session, and obtain relief.

The authorities cited by appellant's counsel, on the proposition that a statute authorizing a board of equalization to raise the valuation of the property of an individual taxpayer, listed by him for taxation, without providing for notice to him of the proposed increase in his assessment, is unconstitutional and void, are not applicable to the questions under consideration. This statute provides that the owner, consignee, or person in charge of the goods or merchandise, shall immediately notify the county assessor, who shall thereupon proceed to value the same at their true value; upon which valuation the taxes for the then current year shall be assessed and collected. The party liable to the payment of the tax has the opportunity to submit evidence to the assessor, and to be heard with regard to the valuation of such property. It is presumed that the assessor, being a sworn officer, will do his duty under the law, and that he will not act unfairly and arbitrarily regarding the assessment of property for the purposes of taxation. In *Hagar v. Reclamation District etc.,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, the court held that the duties of assessors, in determining the value of property for the purposes of general taxation, are judicial in their nature. Thus, in the case at bar, respondent Williams, the county assessor, acted in a judicial capacity in placing the valuation upon appellant's goods for such purposes. Assessors are usually classified as

officials performing both ministerial and judicial func-
tions. We are therefore of the opinion that this statute
does not deprive a party of his property without due
process of law, as urged by appellant, in that it fails to
provide for a hearing in behalf of an aggrieved party
whose property is sought to be charged with the tax. *Ha-
gar v. Reclamation District etc., supra.*

The question as to what remedies may be open to a
taxpayer under this law, in case of an illegal assessment
or overvaluation of his property, is not properly before
us on this appeal. The present inquiry, on the face of
the record, by the stipulation of the parties to this contro-
versy, is limited to the single proposition regarding the
constitutionality of the above statutory provisions. Inas-
much as this law provides that the party charged with the
tax has an opportunity to submit his proofs and make
his showing to the assessor, in the matter of assessing his
property for taxation, we are not justified in concluding
that such party is deprived of his property "without due
process of law," because he is, by the express terms of
the revenue law, given no opportunity to have the assess-
ment reviewed by a board of equalization, or otherwise.
Undoubtedly in case the assessor should act arbitrarily,
unfairly, or fraudulently in the performance of his duties
under this statute, the aggrieved party might, if he saw
fit, invoke the common law remedies in the courts to re-
dress the wrongs which he suffers in consequence of such
official misfeasance or malfeasance. Moreover, the code
provides that,

"A writ of review shall be granted by any court, except
a police or justice court, when an inferior tribunal, board
or officer, exercising judicial functions, has exceeded the
jurisdiction of such tribunal, board or officer, or one acting
illegally, or to correct any erroneous or void proceeding,
or a proceeding not according to the course of the common

law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law." Laws 1895, p. 115, § 4; Pierce's Code, § 1396; Bal. Code, § 5741.

This court, in *State ex rel. Lewis v. Hogg,* 22 Wash. 646, 62 Pac. 143, held that the above provisions applied to a county treasurer exercising judicial functions, where "there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law." We see no reason why this remedy may not be invoked in a proper case regarding the acts of a county assessor, or other official exercising judicial functions. Under the provisions of Chap. 59, Pierce's Code, the court issuing the writ is vested with ample powers to inquire into the merits of the controversy and "give judgment, either affirming or annulling or modifying the proceedings below." See further, *Lewis v. Bishop,* 19 Wash. 312, 53 Pac. 165, and authorities cited.

Coming now to the consideration of the constitutionality of the proviso contained in the above statute, we think that the legislature was without power or authority to enact any law providing that, after the payment of such taxes, the person paying them should be allowed certain deductions from the next regular assessment of such property. Article 1, § 12, of the state constitution, provides: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." This law, by the terms of the proviso, not only discriminates between taxpayers of the same class, but grants privileges and immunities to taxpayers who own or possess property at the time of the next regular assessment, which are withheld from and denied to parties similarly situated, who may

have paid their taxes levied pursuant to the above statute, and who cease to own or have property on the tax rolls at the time of the next regular assessment. Again, this provision discriminates between taxpayers whose property is listed on rolls of the next regular assessment, after the itinerant shall have paid his tax. He is granted exemptions in the latter instance which are denied to other property owners or taxpayers of the same class, whose property is listed for the regular assessment named in such proviso. The legislature cannot grant such exemptions or immunities directly; neither can it accomplish the same object by indirection. Cooley's Const. Lim. (5th ed.), p. *391.

Absolute equality in matters of taxation is an impossibility. An eminent jurist, the late Mr. Justice Miller, of the supreme court of the United States, in one of his opinions, remarked that such a condition was an "unrealized dream." Moreover, we think that this proviso is repugnant to the purview of the section to which it is appended. This section was evidently enacted for the purpose of reaching a certain class of property that was liable to escape taxation, unless special measures and remedies were provided for the assessment and collection of the tax. While it was competent for the legislature to enact such a law, it was not competent for it to tack on a further provision, allowing a commutation or abatement of the tax, or any portion thereof, either directly or indirectly. The logic of this conclusion is made the more apparent when we read the proviso in the light of the enactments found in our state constitution, above noted. It is provided in our organic law that all property, unless legally exempt, "shall be taxed in proportion to its value to be ascertained as provided by law." It is significant in this connection that there are no exemptions mentioned or provided for in our fundamental law, authorizing the

legislature to make any deductions from the amount of any tax, after it shall have been assessed, levied, and collected pursuant to law. See, also, art. 11, § 9, state constitution, which provides that "No county, nor the inhabitants thereof, nor the property therein, shall be released or discharged from its or their proportionate share of taxes to be levied for state purposes, nor shall commutation for such taxes be authorized in any form whatever." True, this provision only relates to the discharge or release of state taxes. Still, if this proviso were allowed to stand, it would have the indirect effect to authorize and permit a release, *pro tanto,* of the state's revenue.

We are fully aware of the rule of law enunciated by some authors, as well as by courts of high repute, that "a saving clause which is repugnant to the enacting part of a statute is void; but a proviso which is repugnant to the purview of the act will override and control the latter." Black, Interpretation of Laws, p. 278. This same learned author, on the next page, says that the distinction drawn between saving clauses and provisos has been much criticised. The following language of Chancellor Kent in Vol. 1 of his Commentaries, p. 463, is quoted by Mr. Black with approval:

"There is a distinction in some of the books between a saving clause and a proviso in the statute; though the reason of the distinction is not very apparent. . . . It may be remarked that a proviso repugnant to the purview of the statute renders it equally nugatory and void as a repugnant saving clause, and it is difficult to see why the act should be destroyed by the one and not by the other, or why the proviso and the saving clause, when inconsistent with the body of the act, should not both of them be equally rejected."

Be this rule of construction as it may, the foregoing distinction is without significance, as applied to the facts

in the action at bar, since we have reached the conclusion that the proviso of the above statute is void on constitutional grounds, and must therefore be rejected. Eliminating the proviso from the above section 12 of the act of 1895, such enactment seems to be complete in itself, fully authorizing the assessment, levy, and collection of the tax in question. *Seanor v. County Com'rs,* 13 Wash. 48, 42 Pac. 552. Judge Cooley in his work on Constitutional Limitations, 5th ed., p. *178, uses the following language:

"Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall."

Testing appellant's complaint in the light of the foregoing propositions of law, we are of the opinion that it fails to state a cause of action against respondents, or either of them, and that there is no error in the record of which appellant has any legal ground for complaint.

The judgment of the superior court is therefore affirmed.