345 P.2d 750

Hortense S. SKINNER, William E. Schwartzman, Theresa S. Cash, Zada Schwartzman, Bertha S. Bruce, Betty Todd Braden, John B. Todd, Bolivar Land Company, Mary Ann Keleher Rogers, Dorothea Fricke Whitcraft, Fred A. White, Valley View Land Co., a New Mexico corporation, Sam Shalit, Raynolds Addition Co., a corporation, Albuquerque National Bank, Trustee Under the Last Will of Arthur J. Maloy, Deceased, and Vista Grande Company, Appellants,

v.

NEW MEXICO STATE TAX COMMISSION, and Board of County Commissioners of Bernalillo County, New Mexico, Appellees.

No. 6525.

Supreme Court of New Mexico.

Sept. 4, 1959.

Rehearing Denied Nov. 13, 1959.

W. A. Keleher, John B. Tittmann, Morgan S. White, Albuquerque, for appellants.

Frank B. Zinn, Atty. Gen., J. Ernest Corey, Spec. Asst. Atty. Gen., Albuquerque, Phil R. Lucero, Ruben Rodriguez, State Tax Commission Attorneys, Santa Fe, for appellees.

CARMODY, Justice.

This is an appeal by plaintiffs, as taxpayers, from the judgment of the district court of Bernalillo County affirming and sustaining the action of the State Tax Commission sitting as a state board of equalization.

The sole question involved is whether a tax equalization program in a county, commenced but not completed in a single year, violates the New Mexico constitutional provision requiring equal and uniform taxes.

The facts are not complicated. In January, 1957, the newly elected county assessor decided to equalize the real estate assessments of Bernalillo County on the basis of sixteen per cent of actual market value. Being limited as to funds and personnel, he was in 1957 only able to reappraise or revalue about twenty per cent of approximately 120,000 pieces of property in the county. As a result, when the assessment roll was prepared for 1957, reappraisal values were used for more than 20,000 pieces of property, but with regard to the remaining eighty per cent the 1956 valuations were utilized without change. The

record does not reveal the percentage of market values used in 1956 except for testimony that there was a wide range of valuations varying from one per cent to one hundred sixty-six per cent. This was actually the basic reason for starting the equalization program.

In connection with the reappraisal values which were used for the twenty per cent, the record fails to indicate any intentional or systematic discrimination. On the contrary, there was apparently an honest effort to equalize all properties that time, ability and circumstances would permit. As to some properties, the appraisal showed that the value had been too high, and as to these the assessments were reduced. Of course, no objection was made on the part of these owners. Plaintiffs' assessments, however, were substantially increased, and they contend that as a result they will pay taxes on a wholly different basis than the other eighty per cent of the property owners in the county. It is therefore urged that there is a violation of the New Mexico constitution, art. VIII, § 1, which reads:

"Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class. (As amended November 3, 1914.)"

The trial court concluded that the equalization program was a continuing process, that it was not contemplated that it could be completed within any given year, and that there was no contravention of the constitutional provision.

Appellants do not seriously protest their valuations nor claim that they are higher than the law allows, but, in effect, say that their assessments cannot be raised unless and until all other property in the county is similarly treated. As an adjunct to this argument, it is also urged that the so-called continuing process of reappraisement is without tangible or legal support and that the same may depend upon the whim of the assessor. This argument is based, at least in part, upon the fact (as is pointed out in the briefs) that the assessor who inaugurated the program was defeated for re-election and that there is no showing in the record that the program will be carried forward.

The problem involved is not new, although this court has not heretofore directly passed upon the question.

In New Mexico, it has long been the rule that a taxpayer who is not assessed more than the law provides has no cause for complaint in the courts in the absence of some well-defined and established scheme of discrimination or some fraudulent action, South Spring Ranch & Cattle Co. v. State Board of Equalization, 1914, 18 N.M. 531, 139 P. 159; In re Taxes Assessed Against Property of Scholle, etc., 1938, 42 N.M. 371, 78 P.2d 1116. The taxpayer's remedy is to have the assessing authority raise the value

on the property claimed to be, valued too low to a level with his own, Oden Buick, Inc. v. Roehl, 1932, 36 N.M. 293, 13 P.2d 1093; State ex rel. State Tax Commission v. San Luis Power & Water Co., 1947, 51 N.M. 294, 183 P.2d 605. These two rules must be construed together, and if there is illegal discrimination as to the assessment against one or more taxpayers, our courts will grant relief and not require the taxpayer to proceed in the federal courts as was done in Hillsborough Tp., Somerset County, N. J. v. Cromwell, 1945, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358.

Here, appellants have shown no discrimination or fraud, nor did they ask that all other property be immediately raised in assessed value. On the contrary, they say, in effect, "we have been under-assessed in the past and we must continue to be under-assessed until every other piece of property is placed on the tax rolls at comparative, though less than market values."

■ As stated heretofore, the valuations for the prior year varied greatly. It cannot be determined from the record what proportion of the eighty per cent, which had not been reappraised, remained at a level of less than sixteen per cent of the market value, or what proportion remained at a level of equal to or exceeding this percentage. We cannot speculate as to this, and the burden is on the plaintiff to prove that an unreasonable number of typical or representative properties were assessed at a level considerably under the sixteen per cent figure. Naturally, the taxpayer would not be required to describe each specific item, but certainly a large enough number so that the court could obtain a true account of the situation without engaging in conjecture. See Appeal of Kliks, 1938, 158 Or. 669, 76 P.2d 974.

This is not a case where one or a few taxpayers are arbitrarily assessed at a higher level than others, as in Sioux City Bridge Co. v. Dakota County, Neb., 1923, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979; nor where a single industry is discriminated against, as in Greene v. Louisville & Interurban R. Co., 1917, 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann. Cas.1917E, 88. It is more analogous to the situation in Sunday Lake Iron Co. v. Township of Wakefield, 1918, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154, where a reappraisal program was commenced but in one year re-assessment was completed on mining properties only. There, the Supreme Court of the United States refused to interfere and allowed the assessment to stand, even though there was an obvious but temporary inequality.

The decisions of the various state courts that have had this question before them for determination are not at all uniform, and it would unduly lengthen this opinion to discuss them all. However, on almost identical facts as here, the Supreme Court of Alabama in a very able and thorough opin-

ion sustained a partial re-assessment in Hamilton v. Adkins, 1948, 250 Ala. 557, 35 So.2d 183. In Citizens' Committee for Fair Property Taxation v. Warner, 1953, 127 Colo. 121, 254 P.2d 1005, 1010, the Supreme Court of Colorado in considering a very comparable problem said:

"The conclusion is inescapable that the assessor was under duty to assess all taxable property for taxation in 1952, regardless of whether the 'reappraisal' thereof had been completed; that although he was not required to await completion of reappraisal before making up his tax roll, he was under obligation nevertheless, in the interest of uniformity, to determine his valuations in conformity with reappraisal standards in so far as this might reasonably be accomplished under the circumstances; and that, these duties having been performed, his actions in that behalf are clothed with the presumption of being correct and regular. It equally is manifest that to overcome this presumption would require a clear showing of illegality and that, for all purposes here, we must assume the regularity and validity of the 1952 assessment roll of Pueblo county as returned by the assessor."

For other recent similar, although not identical, decisions, see May Department Stores Co. v. State Tax Commission, Mo.1958, 308 S.W.2d 748; and Rogan v. County Commissioners of Calvert County, 1950, 194 Md. 299, 71 A.2d 47.

There are a few cases from other jurisdictions which seem to rule to the contrary, but we do not feel that they are persuasive.

We hold under the facts in this case that there is no showing of a violation of the constitutional provision here involved. We do feel constrained to add that there is a presumption that tax officials will do their duty in accordance with the law and not act unfairly or arbitrarily regarding the assessment of property, Nathan v. Spokane County, 1904, 35 Wash. 26, 76 P. 521, 65 L.R.A. 336, 102 Am.St.Rep. 888; compare Abreu v. State Tax Commission, 1924, 29 N.M. 554, 224 P. 479; Jackson v. State Tax Commission, 1924, 29 N.M. 561, 224 P. 482; Alamogordo Improvement Co. v. Prendergast, 1939, 43 N.M. 245, 91 P.2d 428, 122 A.L.R. 1277, and In re Trigg, 1942, 46 N.M. 96, 121 P.2d 152. See, also, Sunday Lake Iron Co. v. Township of Wakefield, supra, wherein the record disclosed that the following year the taxing officials rectified the inequality and thereby overcame any apparent discrimination. The finding of the lower court in the instant case, that the equalization program was a continuing one, makes the Sunday Lake case particularly pertinent here.

Based on the above presumption, the reappraisal of property in Bernalillo County should proceed expeditiously in accordance

with the announced plan. In event there is a failure to so continue, appellants would be fully justified in taking such action as might be required to force a corresponding revaluation of all of the other property in the county. However, we trust that the taxing officials have already finished, or within the immediate future will complete, the equalization program so that no further action on the part of the appellants will be necessary.

The judgment of the district court will be affrmed, and it is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and MOISE, JJ., concur.