County Assessor — Revaluation — Rate 1. The county assessor must use the most recent information available to him in valuing property placed on the tax rolls. He should not wait until 1972 to place property on the rolls at its new value. 2. It is not discriminatory for the county assessor to establish and proceed with a systematic plan for revaluation that will be done in phases resulting in some property being placed on the tax rolls at its new value in one year and other property being revalued and placed on the tax rolls at a higher rate in a subsequent year. 3. It is not necessary that all property be revalued before placing revalued property on the tax roll at new values. Property must be placed on the tax rolls at the new value. The Attorney General has had under consideration your letter wherein you ask the following questions: "1. If revaluation of a county is completed before 1972, must the County Assessor wait until 1972 before placing said property at its new value on the tax roll or may the property be placed on the tax roll in a prior year? "2. . . . Would it be discriminatory for the County Assessor to establish and proceed with a systematic plan for revaluation that will be done in phases resulting in some property being placed on the tax roll at its new value in one year and other property being placed on the tax roll in a subsequent year or years? "3. In regard to the provision requiring revaluation on a continuous basis at least once each five (5) years, it is necessary that all property be revalued before placing such property on the tax roll at its new value or may said property be listed on the new tax roll in the year it is revalued?" The following are relevant to your inquiries. Title 68 O.S. 2481.1 [68-2481.1] (1968): "Each county assessor shall commence, immediately if possible, but no later than January 1, 1969, a comprehensive program of revaluation of all taxable property within his respective county. Such program shall progress at a rate which will result in the revaluation of all taxable property within the county before January 1, 1972. Each assessor shall thereafter maintain an active and systematic program of revaluation on a continuous basis, and shall establish a revaluation schedule which will result in revaluation of all taxable property within the county at least once each five (S) years. . . ." Oklahoma Constitution, Article X, Section 5 : "The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects." Oklahoma Constitution, Article X, Section 8 : "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five per cent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale: . . ." Title 68 O.S. 2427.8 [68-2427.8](a) (1968): "(a) All taxable personal property except intangible personal property, shall be listed and assessed each year at not to exceed thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale, as of the first day of January, . . ." Title 68 O.S. 2427.8 [68-2427.8](b) (1968): "(b) All taxable real property shall be assessed annually, at not to exceed thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale, as of the first day of January of each year, but need not be listed with the County Assessor." The comprehensive program of revaluation may result in a situation where only a partial revaluation is completed during a year. The county assessor has a duty to list and assess property yearly and the statutes indicate that current values are to be used. The Supreme Court of Colorado considered a similar problem in the case of Citizens' Committee for Fair Property Taxation v. Warner,127 Colo. 111, 254 P.2d 1005 (1953), and stated: "The conclusion is inexcapable that the assessor was under duty to assess all taxable property for taxation in 1952, regardless of whether the `reappraisal' thereof had been completed; that although he was not required to await completion of reappraisal before making up his tax roll, he was under obligation nevertheless, in the interest of uniformity, to determine his valuations in conformity with reappraisal standards in so far as this might reasonably be accomplished under the circumstances; and that, these duties having been performed, his actions in that behalf are clothed with the presumption of being correct and regular. . . ." Therefore, in answer to your first question, it is the opinion of the Attorney General that the county assessor must use the most recent information available to him in valuing property placed on the tax rolls. He should not wait until 1972 to place property on the rolls at its new value. The supreme courts of several states have considered the problem of discrimination when a program of revaluation cannot be completed within a year resulting in some property being placed on rolls at a new higher value while other property, not yet revalued, remains at a lower value. The courts agree that as long as the assessor is proceeding expeditiously with a planned program of revaluation and there is no well defined, arbitrary, or established scheme of discrimination or fraudulent action, taxpayers cannot complain as long as their property is not overvalued. As the revaluation plan continues, all property will in fact be revalued and any inequalities will cease. Annotation 76 A.L.R. 2d 1077; Skinner v. New Mexico Tax Commission, 66 N.M. 221, 345 P.2d 750 (1959); Citizens' Committee for Fair Property Taxation v. Warner, supra; Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183
(1948); and Sunday Lake Iron Co. v. Township of Wakefield,247 U.S. 350, 38 S.Ct. 495,62 L.Ed. 1154, (1917). Therefore, it is the opinion of the Attorney General that your second question be answered in the negative. It would not be discriminatory for the county assessor to establish and proceed with a systematic plan for revaluation that will be done in phases resulting in some property being placed on the tax rolls at its new value in one year and other property being revalued and placed on the tax roll at a higher value in a subsequent year. In view of the foregoing, your third question is answered as follows: It is not necessary that all property be revalued before placing revalued property on the tax roll at new values. Property must be placed on the tax rolls at the new value. (Prudence Little) ** SEE: OPINION NO. 73-179 (1973) **