BRUNKEN TOYOTA, INC., et al., Appellants,

v.

The CITY OF LUBBOCK et al., Appellees.

No. 5072.

Court of Civil Appeals of Texas, Eastland.

, Nov. 3, 1977.

Rehearing Denied Dec. 8, 1977.

**524**

Aubrey J. Fouts, Key, Carr, Evans & Fouts, Lubbock, for appellants.

Fred O. Senter, Jr., City Atty., Charles L. Cobb, McWhorter, Cobb & Johnson, Lubbock, for appellees.

WALTER, Justice.

Brunken Toyota, Inc., Carlsbad Auto Company, Inc. d/b/a Pollard Friendly Ford, Inc., and Don Crow, Trustee, filed suit against the City of Lubbock, Lubbock Independent School District, the Board of Equalization for the City and the School District, and John R. Brooks, Tax Assessor and Collector, seeking injunctive relief. Plaintiffs contended the ad valorem tax system adopted by the defendants in 1975 for the years 1975 and 1976 was arbitrary and capricious and in violation of Article 8, Section 1 of the Texas Constitution.

In a trial before the court without a jury, judgment was rendered for the defendants and the plaintiffs have appealed.

Appellees say the statement of facts given by appellants in their brief is correct and is adopted by them. We copy from appellants' brief the following facts which we find are supported by the record:

"Plaintiffs went to trial on their Second Amended Original Petition in which they contend that the method and plan adopted by the Defendant Taxing Authorities for the year 1975 is arbitrary and capricious, resulting in the Plaintiffs' properties being valued for tax purposes grossly in excess of the fair market value of the properties and further resulting in discriminatorily excessive assessments of the Plaintiffs' properties as compared with comparable properties within the jurisdiction of the Taxing Authorities. The Plaintiffs attacked the selective re-evaluation system adopted by the Taxing Authorities which involved re-evaluation of only certain segments of the community in 1975 without a corresponding adjustment in the values of other comparable properties in other segments of the community.

Plaintiffs contend that the application of the plan of taxation results in their paying a disproportionment share of the taxes levied by the Taxing Authorities in comparison with other taxpayers of the same class and that therefore the system of taxation adopted in 1975, which was also applied in 1976, is discriminatory, arbitrary, capricious and violates the Constitution and Statutes of the State of Texas.

This suit was brought prior to the closing of the tax rolls in 1975 and the plan under attack has not been put into effect as to the Plaintiffs' properties for either 1975 or 1976.

The Plaintiffs sought injunctive relief to prevent the Taxing Authorities from putting the plan of taxation into effect as to their properties for 1975 and 1976 and they sought a mandatory injunction requiring the Defendants to reassess their property on a basis of equality and uniformity with other taxpayers in accordance with the Constitution and Laws of the State of Texas for 1975 and requiring the Defendants to accept the rendered values of the Plaintiffs on the properties as the assessed value for the year 1976.

The Defendants by their First Amended Original Answer denied the allegations of the Plaintiffs and contended that they had adopted a continuing program of re-evaluation of properties in good faith and with available personnel whereby a certain section of the taxing units is re-evaluated on an annual basis and in rotation without discrimination. The Defendants contend that they made an honest effort to equalize all properties which time, ability and circumstances would permit and they denied that any of the properties of Plaintiffs were valued in excess of their market value for purposes of taxation.

The case was tried to the Court resulting in a judgment favorable to the Defendant Taxing Authorities on October 21, 1976, based upon findings of fact and conclusions of law contained in the judgment and additional findings of fact and conclusions of law in response to the requests of the Plaintiffs. The Plaintiffs have duly perfected their appeal from such judgment to this Court.

.     .     .     .     .

Appellants believe that a brief review of the tax evaluation and assessment system adopted by the Taxing Authorities prior to the years in controversy is important to an understanding of how the system which the Appellants contend is illegal came into being in 1975.

In 1965 an outside appraisal firm was engaged by the Taxing Authorities to reappraise the entire City and School district. This firm established a principle which has been consistently followed since that time of using 90% of the market value of property as the full appraised value for tax purposes. The assessment upon which the actual tax is based is calculated on the basis of sixty-six and two-thirds percent (66⅔%) of the appraised value, or sixty percent (60%) of the market value. At the same time that this basic system was established in 1965, a policy or program was adopted under which it was intended that there would be reappraisals of all property in the jurisdictions each five (5) years. By 1967, because of rapid increases in market value arising from inflation, it was determined by the Taxing Authorities that they could not wait five (5) years to reappraise property for tax purposes.

In 1968, for the first time, a plan was adopted by the Taxing Authorities under which the City was divided into five (5) zones with the intent that a single zone would be reappraised each year for tax purposes over a five-year cycle. This represented a new concept of zoning reappraisal in Lubbock. The first section to be reappraised under the new concept was southwest Lubbock."

John R. Brooks, Tax Assessor and Collector for the City of Lubbock, testified substantially as follows:

I assess and collect all taxes for the City of Lubbock and Lubbock Independent School District. My office recognizes the starting point for ad valorem taxes is to determine the fair market value of property. We have an interim value that we call the full appraised value which was established in 1965 by an outside appraisal firm. This interim tax office appraised value was set at 90% of fair market value. We have used this standard since 1965. We then assess at 66⅔% of the full appraised value.

In 1968, we had the City divided into five zones and it was to be a five year

cycle. The first section reappraised in 1968 was the southwest part of the city.

In 1974, in preparation for the year 1975, we made some changes in the manner in which we approached the reappraised process.

We adopted an appraisal or cost manual that was prepared by Mr. Griggs. Px 1 is a copy of the cost manual. I believe the manual deals with construction costs based on 1975 costs.

In 1974, we rezoned the City into four zones.

Appellants contend the cycle reassessment policy of the appellees and their formula, method and system of assessment adopted for the years 1975 and 1976 are invalid, arbitrary and capricious.

Although the issue has not been passed upon in Texas, other jurisdictions have approved cycle reassessment programs. An early United States Supreme Court case established the burden to be met by the party complaining of a reappraisal program. In deciding whether the plaintiff in error had been denied equal protection, the court said to support a claim of discrimination, it must be shown there was an "intentional" violation of the principle of uniformity by the Taxing Authorities. *Sunday Lake Iron Co. v. Wakefield,* 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).

Facts similar to the instant case were considered by the Alabama Supreme Court in *Hamilton v. Adkins,* 250 Ala. 557, 35 So.2d 183 (1948). The board of equalization had developed a four-year systematic plan of review and revision of assessments. The Alabama Constitution's uniformity requirements were similar to those found in the Texas Constitution. The complainants alleged inequality resulted in their property valuations which increased while properties in other parts of the county were not increased. In upholding this four-year revaluation plan, the Supreme Court of Alabama said:

"In short there must be a systematic and intentional discrimination before the State constitution is violated."

In finding no fraud or evil intent on the part of the board of equalization, the court pointed out that mere inequality in valuation does not contravene Alabama constitutional provisions. *Hamilton,* supra.

It is well settled in Texas and other jurisdictions that exact uniformity and equality of taxation is virtually impossible to achieve and an unattainable ideal. *State v. Whittenburg,* 265 S.W.2d 569 (Tex.1954); *Briscoe Ranches, Inc. v. Eagle Pass Independent School District,* 439 S.W.2d 118 (Tex.Civ. App.—San Antonio 1969, writ ref. n.r.e.); *Wild Goose Country Club v. Butte County,* 60 Cal.App. 339, 212 P. 711 (1923).

New Mexico has a constitutional provision much like the Texas Constitution requiring equal and uniform taxes. Taxpayers complained the equal and uniform language in the Constitution had been violated when only 20% of the tax equalization program had been completed in a single year. The Supreme Court of New Mexico upheld the program indicating the record failed to demonstrate any intentional or systematic discrimination. *Skinner v. New Mexico State Tax Commission,* 66 N.M. 221, 345 P.2d 750 (1959).

Citing *Hamilton,* supra, and *Skinner,* supra, the Supreme Court of Washington reemphasized the importance of the *Sunday Lake,* supra, decision:

" . . . state courts which have considered cyclical revaluation programs have generally found them to be compatible with constitutional equal protection and uniformity provisions, provided they be carried out systematically and without intentional discrimination." *Carkonen v. Williams,* 76 Wash.2d 617, 458 P.2d 280 (1969).

It is well settled in this State when a board of equalization assesses property for tax purposes, it is exercising a quasi-judicial function. *State v. Houser,* 138 Tex. 28, 156 S.W.2d 968 (1941). In exercising this function, a strong presumption exists in favor of the actions taken by the board that it acted in good faith. *Pierce v. City of Jacksonville,* 403 S.W.2d 512 (Tex.Civ.App.—Tyler 1968, writ ref. n.r.e.).

We find no merit in appellants' contention the evidence conclusively establishes they have shown substantial injury by comparison of the assessed values of comparable property owners of the same class in zones other than Zone 1 with the assessed value applied to plaintiffs' property.

In *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414 (1954), it is said:

"The Board of Equalization did not follow the statutory mandates for arriving at the value of property. It ignored market value as the basis for valuation. Its procedures in this respect were wholly unlawful and fundamentally wrong. It is now settled, however, that to obtain relief from taxes arrived at through the use of an arbitrary, illegal and fundamentally erroneous plan of valuation, the taxpayer must show substantial injury. *Druesdow v. Baker,* Tex.Com.App., 229 S.W. 493, affirmed *Baker v. Druesdow,* 263 U.S. 137, 44 S.Ct. 40, 68 L.Ed. 212; *Rowland v. City of Tyler,* Tex.Com.App., 5 S.W.2d 756; *Lubbock Hotel Co. v. Lubbock Ind. School Dist.,* Tex.Civ.App., 85 S.W.2d 776, no writ history. We had occasion to write at some length on the subject in *State v. Whittenburg,* supra, and what was said there need not be repeated here."

In *City of Orange, Texas v. Levingston Shipbuilding Company,* 258 F.2d 240 (5th Cir. 1958), it is said:

"If there is one thing made plain by the contemporary authoritative decisions of the Texas Courts and especially that of *Montgomery County v. Humble,* [Tex.Civ. App., 245 S.W.2d 326] supra, it is that when taxpayers undertake to establish invalidity either from excessiveness or inequality, it is not enough to take values fixed by the taxing authorities. If comparative values are relevant, either to establish excessiveness, inequality, or as here to show the dollar impact of omissions of property from the tax roll, the actual values must be established in a traditional way.

. . . It is merely an application of the approach consistently laid down that no matter how illegal the assessment, no matter how much it violates the State Constitutional pattern, the only relief of a taxpayer defending delinquent tax suit is to show in dollars that he is worse off.

Consequently, Taxpayer failed in meeting the burden imposed by the Texas law . . . ."

We have considered all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.