592 P.2d 965

**ERNEST W. HAHN, INC. and Dale Bellamah Land Co., Inc., Petitioners,**

v.

**COUNTY ASSESSOR FOR BERNALILLO COUNTY, New Mexico, Respondent.**

No. 12030.

Supreme Court of New Mexico.

Dec. 11, 1978.

Johnson & Lanphere, J. Victor Pongetti, Albuquerque, for petitioners.

Hunter L. Geer, Albuquerque, for respondent.

## OPINION

PAYNE, Justice.

This matter involves the constitutionality of property taxes imposed on properties located in Bernalillo County belonging to Ernest W. Hahn, Inc. and Dale Bellamah Land Company, Inc. Taxpayers protested Notices of Valuation received from the Bernalillo County Assessor. They challenged the valuations placed on their properties and claimed that the assessor's revaluation of their properties was unconstitutional. The Bernalillo County Valuation Protests Board denied the protests, holding that the revaluation was part of "an unscheduled continuous reappraisal program" designed to keep values current. The Court of Appeals affirmed this finding, but remanded the case in order to permit taxpayers to present their constitutional claims to the Protests Board. *Matter of Protest of Miller,* 88 N.M. 492, 542 P.2d 1182 (Ct.App. 1975), *cert. denied,* 89 N.M. 5, 546 P.2d 70 (1975). On remand the Protests Board again upheld the assessor's actions and the Court of Appeals affirmed. We granted certiorari to consider the constitutionality of the assessor's actions under Article VIII, Section 1 and Article II, Section 18 of the New Mexico Constitution. We reverse.

■ The assessor contends that this appeal is barred by the doctrine of res judicata in that the earlier decision of the Court of Appeals in *Miller* constituted a final decision on the merits. We hold to the contrary.

In *Miller* the court decided that the assessor's actions did not violate §§ 72–2–21.1 to 72–2–21.14, N.M.S.A.1953 (Supp.1973) (repealed by Laws 1968, ch. 61, § 7, Laws 1970, ch. 31, § 22, Laws 1973, ch. 274, § 23, and Laws 1974, ch. 92, § 34). The constitutionality of the assessor's reappraisal of taxpayers' properties was not decided in *Miller*. To the contrary, the Court of Appeals remanded the case to the Protests Board to consider the constitutional challenge. Therefore, the doctrine of res judicata does not bar this appeal.

On remand to the Protests Board, the issue was submitted on stipulated facts. In 1965 and 1966 all of the land in Bernalillo County was appraised pursuant to an overall program called the Jacobs Reappraisal. In October 1974 the assessor commenced a new program designed to reappraise all the land in Bernalillo County over several succeeding years. Between 1966 and October 1974, however, there was no scheduled, systematic reappraisal program applicable to all properties in Bernalillo County, nor was there an overall reappraisal program designed to cover all property having a similar zoning classification. The assessor did engage in "an unscheduled continuous reappraisal program" during those years.

Only eight to ten percent of the land within Bernalillo County was reappraised during the eight-year period of the "unscheduled" program. In 1969 the assessor reassigned a new market value to one percent of the total property in Bernalillo County. In 1970 the value of taxpayers' properties was raised approximately one hundred percent while only three percent of the total property in the county was reappraised. In 1971 and 1972 the assessor assigned a new value to one percent of the lands in the county and again taxpayers' lands were subjected to reappraisal. Taxpayers protested all three of the new value assignments and in each instance the Property Appraisal Department in Santa Fe lowered it to the average market value. Then, in 1973 the assessor raised the value of these properties for purposes of the 1974 tax year approximately one hundred and eighty percent above their 1966 assessed value while reappraising another two percent of the lands in the county. Taxpayers maintain that the 1973 revaluation for purposes of 1974 taxes was contrary to Article VIII, Section 1 and Article II, Section 18 of the New Mexico Constitution.

Article VIII, Section 1 provides:

Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class.

Article II, Section 18 provides:

No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws.

■ Violations of constitutional uniform taxation requirements frequently result in violations of equal protection clauses. *Larson v. State,* 166 Mont. 449, 534 P.2d 854 (1975). A taxpayer must not be subjected to discrimination in the imposition of a property tax burden which results from systematic, arbitrary, or intentional revaluation of some property at a figure greatly in excess of the undervaluation of other like properties. *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *McCluskey v. Sparks,* 80 Ariz. 15, 291 P.2d 791 (1955); *Hamm v. State,* 255 Minn. 64, 95 N.W.2d 649 (1959).

■ The evidence consists of stipulated facts and documents; therefore, this Court is in as good a position to review the facts as the Protests Board and the Court of Appeals and is not bound by their findings. *House of Carpets, Inc. v. Mortgage Investment Co.,* 85 N.M. 560, 514 P.2d 611 (1973). Property values in Bernalillo County greatly increased from 1966 to 1974. Any reappraisal would therefore lead to an increase in property taxes. Taxpayers' properties

were reappraised every year from 1970 through 1973 while over ninety percent of the land in Bernalillo County had not been subjected to even a single reappraisal. Although taxpayers' property taxes have more than tripled, the large majority of property taxes in Bernalillo County have remained unchanged during this period.

■ In *Skinner v. New Mexico State Tax Commission*, 66 N.M. 221, 223, 345 P.2d 750, 752 (1959), this Court held that a "well-defined and established scheme of discrimination" in the method used for reappraising land within a county would violate Article VIII, Section 1 and entitle the taxpayer to relief. We also held that there was no requirement under Article VIII, Section 1 for reappraisals of all comparable properties within a county to be completed within a single year. Temporary inequalities which result from the practicalities of carrying out a county-wide systematic and definite property appraisal program are inevitable and constitutional. This rule is universally accepted. *Hamilton v. Adkins*, 250 Ala. 557, 35 So.2d 183 (1948), *cert. denied*, 335 U.S. 861, 69 S.Ct. 133, 93 L.Ed. 407 (1948); *Maricopa County v. North Central Dev. Co.*, 115 Ariz. 540, 566 P.2d 688 (Ct. App.1977); *Rogan v. County Commissioners of Calvert County*, 194 Md. 299, 71 A.2d 47 (Ct.App.1950); *Larson, supra.* However, singling out one or a few taxpayers for reappraisals for several years in succession while virtually all other owners of comparable properties do not undergo a single reappraisal in the same period is an inequality that is neither temporary nor constitutional. *Maricopa County, supra*; *Penn Phillips Lands, Inc. v. State Tax Commission*, 247 Or. 380, 430 P.2d 349 (1967).

■ We conclude that in the present case the reappraisal was done in a systematically discriminatory manner. First, taxpayers were singled out for selective enforcement of tax laws that apply equally to all similarly situated taxpayers. In the event the assessor was choosing properties for revaluation on a random basis, the statistical odds against taxpayers' properties being picked for revaluation in each of four consecutive

years would be no more than one chance in sixteen million.

Second, it is uncontested that the 1970–1973 reappraisals of taxpayers' properties were not conducted as part of a definite and logical plan for the revaluation of all properties within Bernalillo County to be executed in a reasonably limited time. To the contrary, had the reappraisals continued at the 1969–1973 completion rate, it might well have taken from fifty to one hundred years to complete the reappraisal of all property within the county. We agree with the Arizona Supreme Court in *Sparks v. McCluskey*, 84 Ariz. 283, 327 P.2d 295, 297 (1958), wherein the court stated:

> The evidence does not indicate how many years might elapse before the program would be complete and equalization effected. We cannot subscribe to the proposition that grossly inequal values by the use of a specific method of assessment may be placed on a small portion of a class of property and remain subject to the disproportionately excessive value for an indefinite number of years in the future until the taxing officials can get around to using the same method upon the other like properties.

The assessor contends that he was under a statutory duty to annually maintain values of property at full actual value. §§ 72–2–1 through 72–2–3, N.M.S.A.1953 (repealed by Laws 1970, ch. 31, § 22 and Laws 1974, ch. 92, § 34). He argues that pursuant to that duty he was engaging in "an unscheduled, continuous reappraisal program" which violated neither the statutes pursuant to which it was conducted nor Article VIII, Section 1 and Article II, Section 18.

■ We need not determine whether the assessor had such a duty under the statutes or whether these reappraisals were conducted as part of such a program. Whatever the assessor's duty may have been under the applicable statutes, he had a *constitutional* duty "to take the necessary action to require, so far as possible, equality and uniformity on a continuing basis." *State ex*

*rel. Castillo Corp. v. New Mexico St. T. Com'n,* 79 N.M. 357, 362, 443 P.2d 850, 855 (1968). The uniformity clause of the New Mexico Constitution requires uniformity of property taxation within a county as well as statewide uniformity of assessments.

■ Uniformity and equality do not mean mathematical exactitude. As this Court said in *Castillo,* "[i]t is, of course, too much to expect that there will be absolute uniformity at any time (appraisals involve the human equation and therefore are simply not 100% accurate)." *Id.* at 362, 443 P.2d at 855. In order to support a claim under the uniformity clause of the New Mexico Constitution, the taxpayer must show that the inequality is substantial and amounts to an intentional violation of "the essential principle of practical uniformity." *Sioux City Bridge Co.,* 260 U.S. at 447, 43 S.Ct. at 192. Mere errors of judgment in estimating market value of property will not be sufficient to show unconstitutional discrimination. But good faith alone will not justify an assessment which is discriminatory in fact. *Sparks v. McCluskey, supra* ; *Maricopa County, supra* ; *Hamm, supra.*

■ A uniform method of taxation requires that each reappraisal be part of a systematic and definite plan which provides that all similar properties be valued in a like manner. We do not prohibit the use of cyclical plans of reappraisal of lands within a county. Such plans need not necessarily be completed within a single year. Where a cyclical program of revaluation is undertaken, however, it must be completed within a reasonably limited time. More than fifty years is not a reasonable time.

■ The constitutional defect in this case is the absence of any systematic and definite plan for the reappraisal of all lands in Bernalillo County. "Without such a plan, there is no assurance of uniformity of appraisal method or of sequential selection of property for reappraisal." *Larson,* 534 P.2d at 857. In determining whether a property revaluation plan constitutes intentional and arbitrary discrimination in violation of the uniformity and equal protection clauses, all relevant circumstances should be taken into consideration. Such factors should include, but not be limited to, the resources realistically available to the assessing authority, the time limitations involved in the plan, the availability of other alternatives, and the amount of temporary inequalities in valuations which result from the cyclical implementation of the plan. *Hillock v. Bade,* 22 Ariz.App. 46, 523 P.2d 97 (1974), *aff'd,* 111 Ariz. 585, 535 P.2d 1302 (1975).

■ Lack of adequate resources with which to undertake and complete a cyclical reappraisal within a reasonable time cannot be relied upon as an excuse where the assessor has a mandatory duty to achieve equal and uniform property taxation. As this Court said in *Castillo, supra* :

> If there is a mandatory duty, delay in exercising it is just as much to be condemned as is the refusal to do the duty. We do not believe that our constitution or the statutes authorize the taxing authorities to procrastinate in making a required decision.

79 N.M. at 362, 443 P.2d at 855.

■ The sole question remaining is the remedy available to taxpayers to redress this constitutional wrong for the 1974 tax year. In *Skinner, supra,* this Court said:

> [A] taxpayer who is not assessed more than the law provides has no cause for complaint in the courts *in the absence of some well-defined and established scheme of discrimination or some fraudulent action* (citations omitted). The taxpayer's remedy is to have the assessing authority raise the value on the property claimed to be, valued too low to a level with his own. (Citations omitted and emphasis added.)

66 N.M. at 223–24, 345 P.2d at 752. The assessor argues that taxpayers must therefore seek an upward revision of the taxes of other members of their class. We have indicated in *Skinner,* however, that this remedy does not apply where there has been a violation of taxpayers' constitutional right to equal and uniform taxation.

In *Hillsborough v. Cromwell*, 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358 (1946) the United States Supreme Court stated:

> The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class. (Citations omitted.)

Forcing taxpayers to carry the burden of joining all other taxpayers to bring about an upward revaluation of their properties would be contrary to the holding in *Hillsborough*. Although *Hillsborough* was decided on the basis of the equal protection clause of the Federal Constitution, we are persuaded that the equal protection and uniform taxation clauses of our own Constitution require the same approach. Taxpayers are entitled to a reduction in their assessment for the 1974 tax year to a level which will achieve the practical uniformity required by Article VIII, Section 1 and Article II, Section 18 of the New Mexico Constitution.

We cannot tell from the existing record whether practical uniformity would be achieved by assessing taxpayers' properties based on the 1966 assessment level. Approximately ninety percent of the properties in Bernalillo County were assessed for purposes of 1974 taxes on the basis of the 1966 reappraisals, but that approach would not necessarily achieve practical uniformity. For example, if the value of taxpayers' properties rose three hundred percent between 1966 and 1974 while the average comparable property rose one hundred percent, that fact would dictate a higher assessment on taxpayers' properties.

We subscribe to the view set forth in *Bemis Bros. v. Claremont*, 98 N.H. 446, 102 A.2d 512, 516 (1954). The court stated: "The relief to which it [plaintiff] is entitled is to have its property appraised for taxation at the same ratio to its true value as the assessed value of all other taxable estate bears to its true value." *See also Southern Pacific Company v. Cochise County*, 92 Ariz. 395, 377 P.2d 770 (1963). On the record before us we cannot say what level of assessment is consistent with this ratio. It was stipulated that the market value assigned by the assessor on residences constructed during or prior to 1966 and which were sold during 1972, 1973 and 1974 amounts to approximately fifty to sixty percent of the actual sales prices at which the homes were sold. This is some evidence of the proper ratio, but there is no evidence of the ratio between assessed value and actual market value of other comparable (commercial) properties in 1974. Therefore, the case must be remanded to the Valuation Protests Board to determine the proper ratio to achieve practical uniformity.

The decision of the Court of Appeals is reversed and the cause remanded to the Valuation Protests Board with directions to reassess taxpayers' properties in accordance with the standards set forth in this opinion.

IT IS SO ORDERED.

McMANUS, C. J., and SOSA, EASLEY and FEDERICI, JJ., concur.