No. 13090

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

———————————

THE DEPARTMENT OF REVENUE
OF THE STATE OF MONTANA,

Appellant,

-vs-

BURLINGTON NORTHERN INC.,

Respondent.

———————————

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

R. Bruce McGinnis argued, Helena, Montana
Poore, McKenzie, Roth, Robischon & Robinson,
Butte, Montana
Robert Poore argued, Butte, Montana

For Respondent:

Gough, Booth, Shanahan and Johnson, Helena,
Montana
Ward Shanahan argued, Helena, Montana

———————————

Submitted: December 9, 1975

Decided: JAN 29 1976

Filed: JAN 29 1976

_____
Thomas J. Kearney
                          Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from an order and judgment of the district court, Lewis and Clark County, affirming the order of the State Tax Appeal Board setting aside the 1974 assessment made by the Department of Revenue of the operating railroad properties of the Burlington Northern railroad system in Montana.

Burlington Northern (BN) operates an interstate railroad system, with lines extending into forty-eight counties of Montana. Each year the Department of Revenue (Department) makes an assessment of the railroad operating properties of BN.

As required by statute, section 84-801, R.C.M. 1947, BN provided the Department with a verified statement of the extent and values of BN's operating properties. The Department assessed BN's franchise, roadway, roadbed, rails and rolling stock pursuant to section 84-802, R.C.M. 1947.

The assessment was made by the unit method, whereby the entire interstate BN system is valued by three distinct and different methods: (1) capitalized income; (2) property and plant; (3) stock and debt. Under the capitalized income method the Department averaged BN's earnings for the past two years and capitalized such earnings by 8.25%. The total depreciated cost of the system gives the property and plant value. To find the stock and debt value, the Department uses the accounting theory that liabilities are matched by assets with the stock valued at its price on national stock exchanges and debt valued as shown on BN's books. The three values are weighted depending on the type of industry and the economics of the time.

The 1974 weighted factors were: 35% for revenue, 35% for plant, and 30% for stock and debt. The total value of the system in 1974 was determined to be $1,272,557,576. This total was further factored by 17.55% to determine the proportion of the

system in Montana ($223,233,855). This Montana value was equalized at 40% to give BN a total assessment of $89,333,542.

Despite a series of conferences between BN and the Department, the final assessment did not resolve all the differences between the parties. BN requested a formal hearing before the Department to show why the assessment should be lowered. Section 84-802. The hearing was held June 19, 1974.

At the hearing BN was represented by two officers knowledgeable in the property tax area, but not by legal counsel. BN objected to inclusion as debt the amount owed by BN to its wholly owned subsidiary, Spokane, Portland and Seattle Railway and objected to the nonuse of an economic obsolescence factor. At the hearing a five page letter from BN was introduced and the company officers answered questions from the hearing officer and the Department attorney prior to resting. Other evidentiary material may have been given to the Department at the series of meetings conducted during the assessment process. The assessment was upheld by the hearing officer.

BN appealed the Department's holding to the State Tax Appeals Board (STAB). A hearing was held before STAB on August 28, 1974. BN was represented at this hearing by legal counsel. BN introduced five written exhibits, which were allowed into evidence over the objection of the legal counsel for the Department. The Department argued the material and additional arguments were a trial de novo beyond the appeal power of STAB as contained in section 84-709, R.C.M. 1947.

On September 18, 1974, STAB reversed the Department's assessment and ordered the BN system's total value be reduced by 25% for economic obsolescence; the SP&S debt was totally eliminated; and the cost of plant was augmented to include the net value of leased equipment.

The Department sought and was granted, under section 82-4216, R.C.M. 1947, judicial review of the STAB findings, conclusions and order. The district court found STAB, not the Department, had replaced the State Board of Equalization; de novo trials by STAB were provided for by section 84-709, R.C.M. 1947; the assessment made by the Department was not entitled to any presumption of correctness; and STAB could hear such evidence as it desired and form its own conclusions as to assessment values.

The Department appeals from the district court order and judgment to this Court under section 82-4217, R.C.M. 1947.

The issues presented for review by this Court are:

(1) Did STAB replace the old State Board of Equalization or did the Department replace the old state board with STAB coming into separate and distinct appellate board status with powers of review over appeals from the Department?

(2) Does STAB have the power to conduct trials de novo on appeals from the Department?

(3) Are the findings and conclusions of the Department entitled to a presumption of correctness?

This Court has been asked to interpret the provisions of the 1972 Montana Constitution and the laws enacted pursuant to that provision creating an independent appeal procedure for aggrieved taxpayers.

Article VIII, Section 7, 1972 Montana Constitution, provides:

"Tax appeals. The legislature shall provide independent appeal procedures for taxpayer grievances about appraisals, assessments, equalization, and taxes. The legislature shall include a review procedure at the local government unit level."

Chapter 405, Laws of 1973, was enacted to implement the constitutional directions. Chapter 405 is entitled:

"An Act to Provide for a General Revision of the Tax Laws of Montana to Implement Article VIII, Sections 3 and 7 of the 1972 Montana Constitution

- 4 -

by Designating the State Department of Revenue as the Tax Administration Agency for the State of Montana, by creating a State Tax Appeal Board, by Designating County Assessors as Agents of the State Department of Revenue and by Providing for County Tax Appeal Boards; and to Repeal * * *."

Under the 1973 Act, the old State Board of Equalization (SBE) ceased to exist, its members becoming the first STAB, section 84-701, R.C.M. 1947. In section 84-402(3), R.C.M. 1947, the Department was given:

" * * * full charge of appraising all property subject to taxation and equalizing values * * *."

The Department's powers and duties include the following as set forth in section 84-708.1, R.C.M. 1947:

"(1) To annually assess the franchise, roadway, roadbeds, rails, and rolling stock, and all other property of all railroads * * * constituting a single and continuous property operated in more than one (1) county in the state, and to apportion such assessments to the counties in which such properties are located on a mileage basis * * *."

" * * *

"(3) To adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable property in any county and in the several counties and between individual taxpayers; * * * and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties between the different classes of property and between individual taxpayers."

The STAB was formed pursuant to section 84-708, R.C.M. 1947, and given the following powers and duties:

"(1) To prescribe rules and regulations for the tax appeal boards of the different counties * * *

"(2) To hear appeals from decisions of the county appeals boards;

"(3) To hear appeals from decisions of the department of revenue in regard to business licenses, property assessments, taxes and penalties.

" * * *

"(5) The state tax appeal board shall have the

- 5 -

duties of an appeal board relating to such other matters as may be provided by law."

Following the assessment of railroads by the Department, in section 84-802.1, R.C.M. 1947, it states:

" * * * any aggrieved party may appeal to the state tax appeal board according to the rules and regulations of said board."

The Department asks this Court to make a determination as to which bodies received the powers of the old State Board of Equalization. The Department contends it is the successor to the SBE in all respects, but a reading of the clear language of the present and former revenue statutes indicates otherwise. The Department received the administrative powers of the SBE contained in former section 84-708. See section 84-708.1, and the title to Chapter 405, Laws of 1973. The appellate powers of the SBE were transferred to STAB by the new section 84-708.

The intent of the legislature to maintain continuity and transfer SBE's tax appellate powers to STAB is shown by Section 51, Chapter 405, Laws of 1973:

"Section 84-707, R.C.M. 1947, is amended to read as follows:

"'84-707. Continuity of action of former board. All records, books, documents, reports, and correspondence relating to tax appeals, received and kept by the former state board of equalization, shall immediately, upon the organization of the new board [STAB], be transferred to it for its use and convenience. The board shall continue and complete any and all work relating to tax appeals undertaken or commenced and not completed by its predecessor.'"

Unfortunately, the legislature had earlier repealed section 84-707, R.C.M. 1947, in Section 58, Chapter 100, Laws of 1973. Section 43-515, R.C.M. 1947, provides:

"An act amending a section of an act repealed is void."

This is true, even if the repeal was inadvertent. In re Naegele, 70 Mont. 129, 224 P. 269; State v. Brennan, 89 Mont. 479, 300 P.

- 6 -

273. The continuity statute is void, but the intent of the legislature to transfer the appellate power to STAB is shown by the attempted amendment of the statute. The last act of the legislature indicates its intent. In re Naegele, supra.

STAB is independent of the Department. Article VIII, Section 7, 1972 Constitution, mandated the tax appeal procedures be independent. STAB was transferred to the Department of Administration for administrative purposes only. Section 84- 702, R.C.M. 1947. It is stated in 82A-108(1)(a), R.C.M. 1947, that an agency allocated to a department for administrative purposes only shall:

> "Exercise its quasi-judicial, quasi-legislative, licensing, and policy-making functions independently of the department and without approval or control of the department."

We are required by statute, section 93-401-16, R.C.M. 1947, to look to the plain language of the legislative enactment to find the intent of the legislature. State v. Midland Nat'l. Bank, 132 Mont. 339, 317 P.2d 880; Morrison v. Farmers' Etc. State Bank, 70 Mont. 146, 225 P. 123. The clear intent of the legislature, as set forth in Chapter 405, Laws of 1973, was to place the tax administrative powers in the Department and the tax appellate powers in STAB.

We must now determine whether STAB, as the tax appeals body, has the authority to receive, during a hearing on an appeal from a decision by the Department, evidence not presented to the Department during the tax assessment procedure.

As was stated above, STAB is allocated to the Department of Administration for administrative purposes only. Section 84- 702. The hearing procedures provided in the Administrative Procedure Act (Chapter 42, Title 82, R.C.M. 1947) does not apply to STAB since section 84-709, R.C.M. 1947, limits the effect of the Act on STAB. Section 82-4223, R.C.M. 1947. The STAB hearing

- 7 -

procedures are contained in section 84-709:

> "Appeal to state tax appeal board--hearing. Any person, firm or corporation or the department of revenue in behalf of the state, or any municipal corporation, aggrieved by the action of any county tax appeal board, may appeal to the state board * * * at the time of giving notice [to the county board and appellant] the state board may require the county board to certify to it the minutes of the proceedings resulting in such action and all testimony taken in connection therewith, and the state board may, in its discretion, determine the appeal on such record if all parties receive a copy of the transcript and are permitted to submit additional sworn statements, or may hear further testimony. * * * In connection with any appeal the state board shall have the authority to affirm, reverse, or modify any decision appealable to the state tax appeal board; the decision of the state tax appeal board shall be final and binding upon all interested parties unless reversed or modified by judicial review. To the extent this section is in conflict with the Montana Administrative Procedure Act, this section shall supersede the Montana Administrative Procedure Act. The state tax appeal board shall not have authority to amend or repeal any administrative rule or regulation. The state tax appeal board must give an administrative rule or regulation full effect unless the board finds any such rule or regulation arbitrary, capricious or otherwise unlawful." (Emphasis added.)

The Department places great emphasis on the fact that the final four sentences of section 84-709 (added by Chapter 277, Laws of 1974) do not contain language permitting additional statements or testimony, as does the preceding portions of the statute. We cannot place the same emphasis on this language.

We must presume the legislature knew what it was doing and was cognizant of the statutes of Montana as then enacted. Helena Valley Irrigation Dist. v. St. Hwy. Comm'n, 150 Mont. 192, 433 P.2d 791. STAB had been transferred to the Department of Administration by Chapter 405, Laws of 1973, for administrative purposes only. Therefore, the executive reorganization statutes (Chapter 82A, R.C.M. 1947) would apply to STAB. The following two definitions in section 82A-103, R.C.M. 1947, apply to STAB:

> "(2) 'Agency' means an office, position, commission, committee, board, department, council, division, bureau, section, or any other entity

or instrumentality of the executive branch of state government.

" * * *

"(9) 'Quasi-judicial function' means an adjudicatory function exercised by an agency, <u>involving the exercise of judgment and discretion in making determinations in controversies.</u> The term includes, but is not limited to, the functions of interpreting, applying, and enforcing existing rules and laws; granting or denying privileges, rights, or benefits; issuing, suspending, or revoking licenses, permits, and certificates; determining rights and interests of adverse parties; evaluating and passing on facts; awarding compensation; fixing prices; ordering action or abatement of action; adopting procedural rules; holding hearings; and any other act necessary to the performance of a quasi-judicial function." (Emphasis added.)

The Department argues STAB is not a quasi judicial body; we agree. STAB does not qualify as such a body as defined in section 82A-112(1), R.C.M. 1947. But, quasi judicial functions can be performed by agencies which are not quasi judicial bodies. If this were not so, the transfer of STAB to the Department of Administration would be meaningless. Section 84-702 refers to section 82A-108 as specifying the limits of the transfer. The latter section provides for the exercise of quasi judicial, quasi legislative, licensing and policy making functions independently of the Department. Of the denoted functions, STAB clearly can perform none of these, except the quasi judicial function. Therefore, we must presume the legislature intended STAB to perform quasi judicial functions or render the statutory action meaningless. As stated in Kish v. Mont. State Prison, 161 Mont. 297, 301, 505 P.2d 891, we have held many times:

"The legislature does not perform useless acts."
See also, Helena Valley Irrigation Dist. v. St. Hwy. Comm'n, supra; Missoula Rural Fire District v. City of Missoula, ____Mont.____, 540 P.2d 958, 32 St.Rep. 926.

STAB is empowered to exercise its judgment and discretion.

To assist in the exercise of this power STAB may do the following, pursuant to section 84-708, R.C.M. 1947:

> "(4) Hearings, witnesses, contempt, fees and subpoenas.  Oaths to witnesses in any investigation by the state tax appeal board may be administered by a member of the board or his agent. In case any witness shall fail to obey any summons to appear before said board, or shall refuse to testify, or answer any material questions, or to produce records, books, papers, or documents when required to do so, such failure or refusal shall be reported to the attorney general, who shall thereupon institute proceedings in the proper district court to punish the witness for such neglect or refusal. * * *" (Emphasis added.)

If a witness refusing to testify or provide documents can be held in contempt, STAB must have the power to call witnesses to testify or present documents, not only on appeals from county boards, but also on subjects not presented to the Department during the assessment procedure.  If this were not the case, STAB could only decide matters on the record forwarded by the Department, with section 84-708(4), R.C.M. 1947, limited to appeals from county boards.  We have already discussed the presumption the legislature knows the law as then enacted, therefore the legislature must have intended STAB under Chapter 277, Laws of 1974 (the last four sentences of section 84-709) would have the use of the oath and contempt powers of section 84-708(4).  To do so, STAB must be able to take additional testimony and receive additional evidence.

The Department contends the hearing before STAB was a trial de novo.  In the instant case there was no de novo trial. STAB heard evidence additional to that presented to the Department, but did not disregard the Department's findings.  The evidence was supplementary to, not in replacement of, the record provided by the Department.  The assessment functions remained in the Department, while STAB reviewed the assessment (as it may under section 84-708(3), R.C.M. 1947), augmenting the record

- 10 -

so it might better perform its duty, as stated in section 84-709:

> " * * * to affirm, reverse or modify any
> decision appealable to the state tax appeal board
> * * *".

To perform this function, STAB may have a complete de novo hearing, for the infrequent case in which the board is of the opinion that it should examine all of the record of the Department, and additional evidence, on a firsthand basis, so as to reach a fair, just and equitable holding.

In the instant case STAB did not affirm nor reverse the decision of the Department; it modified the decision to include or exclude matters which it, in its judgment and discretion, believed should be taken into consideration in the process of assessing BN for its property in this state.

The Department argues it should have a presumption of correctness, thereby saddling BN with the burden of proving the Department's conclusions were arbitrary or capricious or illegal. The Department does have a presumption of correctness if its decisions are pursuant to an administrative rule or regulation, and the rule or regulation is not arbitrary, capricious or otherwise unlawful. Section 84-709. The Department has not promulgated a rule or regulation prescribing the method to be used in assessing railroad property. Without such a rule or regulation, STAB has the discretion to examine the procedures used by the Department, with any additional evidence it may receive, to determine whether the procedures, and decisions based on such procedures, are fair, just and equitable.

The Department contends a rule or regulation describing the method of assessment of railroads would freeze the weight given each assessment factor. We do not agree. The Department can draft a rule or regulation setting forth the assessment

- 11 -

methods without freezing the factor weights, if the method used to determine the weights on a year to year basis is included in the rule or regulation; e.g. a listing of the considerations to be used to determine the weights given each factor.

The Department also raises the issue of whether a full de novo hearing allows sufficient time to complete the tax assessment and allocation procedures in the time prescribed by statute (section 84-802). The legislature, in its wisdom, has decreed that the procedure as described in this opinion be used in assessing and contesting tax cases. If insufficient time to complete the procedure is a reality, the legislature may take action to correct the problem. The Department has the duty to recommend such legislation. Section 84-708.1(14), R.C.M. 1947.

To summarize, we hold the powers and duties of the old SBE were divided between the Department (administrative) and STAB (appellate). STAB has the authority to receive, during a hearing, testimony and evidence not presented to the Department during the tax assessment procedure. STAB performs quasi judicial functions, although not a quasi judicial body. While performing these functions, it may conduct a de novo hearing in the event the Department has (a) not promulgated administrative rules or regulations covering the tax matter over which the appeal arises, and (b) STAB is of the opinion firsthand knowledge of all facts of the matter is necessary. A decision of the Department is not entitled to a presumption of correctness if the decision is not pursuant to an administrative rule or regulation, or the decision, rule or regulation is arbitrary, capricious or otherwise unlawful. A rule or regulation describing the method of assessing railroads need not freeze the weight given assessment factors. Only the legislature may correct any problem arising due to any lack

of sufficient time to complete assessment and allocation procedures under the statutory scheme set out in Title 84, R.C.M. 1947.

We affirm the judgment and order of the district court, except the holding that STAB replaced the old SBE as we have held both the Department and STAB replaced the old SBE.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices