No. 14960

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

THE DEPARTMENT OF REVENUE
OF THE STATE OF MONTANA,

                    Petitioner and Appellant,

        vs.

STATE TAX APPEAL BOARD,
COUNTRYSIDE VILLAGE, INC., et al.,

                    Respondents and Respondents.

---

Appeal from:  District Court of the Eighth Judicial District, In
              and For the County of Cascade,
              Honorable H. William Coder, Judge presiding.

Counsel of Record:

    For Appellant:

        R. Bruce McGinnis, Dept. of Revenue, Helena, Montana
        Randall Swanberg argued, Great Falls, Montana
        Swanberg, Koby, Swanberg & Matteucci, Great Falls,
         Montana

    For Respondents:

        Church, Harris, Johnson & Williams, Great Falls,
         Montana
        Robert P. Goff argued, Great Falls, Montana
        Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
         Montana
        Mark D. Safty argued, Billings, Montana
        Church, Harris, Johnson & Williams, Great Falls, Montana
        Milton Wordal argued, Great Falls, Montana
        James R. Paul, Great Falls, Montana
        Bottomly and Gabriel, Great Falls, Montana
        James, Gray & McCafferty, Great Falls, Montana
        Jardine, Stephenson, Blewett & Weaver, Great Falls, Montana

    For Amicus Curiae:

        Scott, Linnell & Newhall, Great Falls, Montana

---

                    Submitted:  February 26, 1980
                     Decided:  JUN 24 1980

Filed:  JUN 24 1980

_Thomas J. Kearney_
                          Clerk

Honorable Gordon R. Bennett, District Judge, delivered the Opinion of the Court.

This is an appeal by the Department of Revenue from a decision of the District Court of the Eighth Judicial District, in and for Cascade County, affirming a decision of the State Tax Appeal Board provided for a blanket 34 percent reduction in the Department's appraisal of the improvements on certain parcels of commercial real property in Cascade County. The Board is joined by thirty-eight taxpayers as respondents. Briefs amicae have been received from taxpayers of several other counties. The decision of the District Court is reversed.

Respondent taxpayers applied to the Cascade County Tax Appeal Board for reduction of the valuation of their commercial property improvements pursuant to section 15-15-102, MCA, after appraisal by the county assessor for the Department of Revenue. After hearing, the county tax appeal board denied relief and appeal was taken to the State Tax Appeal Board (hereinafter referred to as "the Board") under section 15-2-301, MCA. The Board overruled the county appeal board and ordered the Department to reduce all of the contested valuations by 34 percent. The Department petitioned for judicial review under section 15-2-303, MCA, seeking reversal of the Board decision and reinstatement of its valuations or, in the alternative, remand to the Board for determination as to whether section 42-2.22(1)-S2200 of the Administrative Rules of Montana (referred to hereafter as A.R.M.) is arbitrary, capricious or unlawful. The District Court denied relief, affirming the Board determination. By separate order, the Court denied the Department's motion to present additional evidence under sections 15-2-303(4) and 2-4-703, MCA, on the ground the Department had an opportunity to present such evidence at

-2-

the county and state appeal board hearings and declined to do so as a "deliberate tactical decision." Both orders were appealed.

The uncontested central facts in the case include the following: The Department in its 1978 appraisal procedures used replacement cost less depreciation as the basis for determining values of all real property improvements. In determining the replacement cost it used statistics contained in two manuals adopted under A.R.M. Section 42-2.22(1)-S2200. The Montana Appraisal Manual was used for appraising residentail property improvements and the Marshall Swift Valuation Service Manual was used for appraising commercial property improvements. The statistics in the Montana Appraisal Manual reflected 1971 replacement costs, while those in the Marshall Swift Manual reflected 1976 replacement costs. At the county appeal board hearing several witnesses testified the 1971 replacement cost figures contained in the Montana Appraisal Manual were only 66 percent of the 1976 replacement cost figures contained in the Marshall Swift Manual. The Cascade County appraiser testified that implementation of the regulation resulted generally in valuation of residential improvements at 60 percent of market value and valuation of commercial improvements at 100 percent of market value.

A preliminary issue is whether the Board has authority to review and determine the legal propriety of the Department's appraisal methods. This gives us little pause. Article VIII, Section 7 of the 1972 Constitution calls for legislature provision of ". . . independent appeal procedures for taxpayer grievances about appraisals . . ." Pursuant to that requirement, section 15-2-201(1)(c), MCA, was enacted to give the Board general authority to hear appeals from the Department

with regard to property assessments, and section 15-7-102(5), MCA, gives the Board specific power to determine appeals of appraisals. Certainly the power to hear appraisal appeals includes the power to pass judgment on appraisal methods, and we so hold.

The next question is whether using different cost data for appraising different types of property within the same statutory classification constituted unlawful discrmination and violation of the requirement for uniformity in taxation. We start with the factual premise that such disparate cost data was in fact used in assessment of respondent taxpayers' property improvements, as found by the Board and the District Court. The legal premise is that both residential and commercial improvements to real property are in the same legislative classification. Section 15-6-134, MCA. The constitutional and statutory requirements for equalization or uniformity within a legislative classification cannot be questioned. See Article VIII, Sections 3 and 7, 1972 Montana Constitution; section 15-7-103(1), MCA; section 15-9-101(1), MCA; Larson v. State and Dept. of Revenue (1975), 166 Mont. 449, 454-455, 534 P.2d 854, 857; State ex rel. Schultz-Lindsay Constr. Co. v. Board of Equalization (1965), 145 Mont. 380, 393, 403 P.2d 635, 641-642. Failure to adhere to the uniformity rule also offends due process and equal protection principles. Larson, supra, 166 Mont. at 455, 534 P.2d at 857. Given the legal and factual premises noted, the method used by the Department in these cases would seem, on its face, to have violated uniformity, equal protection and due process requirements. If different valuation statistics are applied to different pieces of property in the same legal classification, an illegal disparity in valuation is likely to result. We cannot,

-4-

however, reach such a conclusion as to any particular properties evaluated in this case because there is inadequate evidence in the record to do so. No evidence of comparable evaluations, as between particular commercial and residential improvements, under the Department's system, appears in the record.

The Department contends, however, that even if the valuation did not meet equalization and due process/equal protection requirements, the assessments were part of a "rolling" or "cyclical" reappraisal system and were, therefore, an exception to these requirements. Such a system contemplates reappraisal of a portion of the property in a particular classification each year under a plan that is aimed at uniformity within the classification of the conclusion of all reappraisal. See discussion in Ernest W. Hahn, Inc. v. County Assessor for Bernalillo County (1978), 92 N.M. 609, 592 P.2d 965, 969; Maricopa County v. North Central Development Co. (1977), 115 Ariz. 540, 566 P.2d 688, 691-692; Patterson v. State and Department of Revenue (1976), 171 Mont. 168, 176, 557 P.2d 798; Larson, supra, 166 Mont. at 455; Annot., 76 A.L.R.2d 1077 (1961). In Larson, supra, we recognized this exception where the inequalities are temporary, but there is no evidence in the record that the Department ever intended, much less planned, that the system be temporary, or that it was part of an overall plan that would eventually result in equalization. The District Court found there was no rolling or cyclical reappraisal system working that would permit an exception to the uniformity, equal protection/due process requirements, and we agree.

Thus, the Board had the authority to adjust and equalize these appraisals and had determined they were unequal. What should it have done? It apparently followed a 1923 ruling of

the United States Supreme Court in Sioux City Bridge Company
v. Dakota County (1923), 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed.
340, and reduced the commercial improvement appraisals by 34
percent across the board in an attempt to equalize them with
residential improvement appraisals.

The key holding in Sioux City Bridge, supra, was stated
as follows:

> "This Court holds that the right of the tax-
> payer whose property alone is taxed at 100
> per cent of its true value is to have his
> assessment reduced to the percentage of that
> value at which others are taxed even though
> this is a departure from the requirement of
> statute.  This conclusion is based on the
> principle that where it is impossible to se-
> cure both the standard of the true value, and
> the uniformity and equality required by law,
> the latter requirement is to be preferred as
> the just and ultimate purpose of the law."
> (Emphasis added.)  Sioux City Bridge, 260 U.S.
> at 446, 43 S.Ct. at 192, 67 L.Ed. 343.

This disposes of the Department's argument that the appraisals
could not be reduced, even though unequal, if they resulted in
an assessment at true market value, or 100 percent of market
value as required by section 15-8-111(1), MCA.  Reduction is
required where it is satisfactorily shown that under the system
as applied it is impossible to meet both the true value and
equality standards.  It could have been concluded, as the
Board and the District Court concluded, that application of
the Department's system would work an inequality of assessment
and that it would be impossible to have both full value assess-
ment and equality under that system.  If it were to be so con-
cluded, reduction would be required and the remaining ques-
tion would be, how much?

The evidence presented to the county and state boards and
to the District Court provides an inadequate basis for any re-
duction that is not conjectural or speculative.  The burden

is on the taxpayer to remove this determination from the realm of conjecture or speculation. Skinner v. N. M. State Tax Comm. (1959), 66 N.M. 221, 345 P.2d 750, 752. It is not sufficient to show the possibility or even the probability of an appraisal of commercial improvements that would be, generally, 34 percent or 40 percent higher than appraisals of residential improvements, as was shown here. Workable criteria for concrete determination of discrepancy have been delineated by the Iowa Supreme Court:

> "In order to obtain relief upon the ground that his property is assessed inequitably, it is essential that the taxpayer prove (1) that there are several other properties within a reasonable area similar and comparable to his; (2) the amount of the assessments on these properties; (3) the actual value of the comparable properties; (4) the actual value of his property; (5) the assessment complained of; (6) that by a comparison his property is assessed at a higher proportion of its actual value than the ratio existing between the assessed and actual valuations of the similar and comparable properties, thus creating discriminations." Maxwell v. Shivers (1965), 257 Iowa 575, 133 N.W.2d 709, 711.

We would adopt these criteria as at least a starting place for actual comparison of true value to assessed value ratios. They, and other reasonable criteria that might be devised by the Department or the Board, should set the standard for proof in each case. See also Bynum v. Alto Independent School Dist. (Tex. 1975), 521 S.W.2d 656, 660. Because no such criteria were followed, and because there was no comparison of actual true and assessed value ratios as between the commercial improvements of the respondent taxpayers and residential improvements of other taxpayers in the county, the decision of the District Court must be reversed and the State Tax Appeal Board's blanket reduction of 34 percent on commerical improvement appraisals must be set aside.

In reversing we do not, however, hold that the appraisals of the Department are confirmed. We only hold that the taxpayers have not introduced sufficient evidence to justify a finding that the appraisal method employed by the Department violates uniformity, equal protection and due process requirements and to warrant a blanket 34 percent reduction of the assessments of commercial property. Therefore, the matter must be returned to the Board for its further consideration.

On further consideration, the Board should hold a hearing at which evidence of the true and assessed values of commercial and residential property is introduced pursuant to the criteria adopted above. This will allow it to compare the actual difference in the true value to assessed value ratios between commercial and residential property resulting from the appraisal method adopted by the Department. The Board might find on such hearing that the Department's appraisal method is arbitrary, capricious or otherwise unlawful, but it may not amend or repeal the appraisal regulation. Section 15-2-301(4), MCA. It may, however, modify the appraisals by reducing the appraisals of commercial property to a ratio of true value to assessed value equal to the ratio applied to residential property. Section 15-2-301(4), MCA.

If, upon a further hearing, the Board finds the Department's appraisal procedure arbitrary, capricious or unlawful and that a reduction in the appraisals of commercial property is justified, proof of an excessive appraisal must be made by each taxpayer who seeks relief. Bynum, supra, 521 S.W.2d at 660. Each taxpayer should follow the above criteria to establish the amount of reduction the taxpayer is entitled to. This does not mean each taxpayer seeking relief must introduce evidence as to the value of all improvements to real property

in a county. The taxpayer must, however, introduce evidence of enough property located near the taxpayer's property and in the same legislative classification so the Board can establish the proper true value to assessed value ratio for the property without speculation or conjecture. Skinner, supra, 345 P.2d at 752. Once the proper ratio has been established, the Board can determine the proper amount to reduce an individual taxpayer's property by applying the ratio to the property.

Resolution of other issues raised on the appeal is not essential to this decision or its implementation and they, therefore, are not considered here. The cause is remanded to the District Court, which is directed to return it to the State Tax Appeals Board for further proceedings in accord with this opinion.

_____
Honorable Gordon R. Bennett,
District Judge, sitting in place
of Mr. Justice Harrison

We concur:

_____
Chief Justice


_____

_____
Justices

Mr. Justice Gene B. Daly agrees with this Opinion but is unavailable to sign.