No. 82-479

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

DEPARTMENT OF REVENUE OF THE
STATE OF MONTANA,

                              Petitioner and Appellant,

     vs.

COUNTRYSIDE VILLAGE, et al.,

                              Respondents and Respondents.

---

Appeal from:  District Court of the Eighth Judicial District,
              In and for the County of Cascade
              Honorable H. William Coder, Judge presiding.

Counsel of Record:

     For Appellant:

          Larry G. Schuster argued, Helena, Montana

     For Respondents:

          Church, Harris, Johnson & Williams, Great Falls, Montana
          George McCabe argued, Great Falls, Montana
          Clary & Clary, Great Falls, Montana

---

                              Submitted:   April 22, 1983

                              Decided:   July 12, 1983

Filed:   JUL 12 1983

*Ethel M. Harrison*
———————————————————————————
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The Department of Revenue of the State of Montana (DOR) appeals from an order of the District Court, Eighth Judicial District, Cascade County, dismissing DOR's petition for judicial review of an order of the State Tax Appeal Board dated November 7, 1980.

By its order, the State Tax Appeal Board (STAB) had remanded the cause to the Department of Revenue, "for reappraisal of the commercial properties involved in a manner which does not violate the constitutional and statutory requirements for equalization or uniformity with other properties of the same legislative class."

We reverse the order of dismissal by the District Court and return the matter to STAB for further proceedings.

The glut of 1978 tax protest cases, including the cases involved in this cause, now clogging STAB, DOR and some district courts, arise from the use in 1978 by DOR of the Montana Appraisal Manual to appraise residential property improvements which reflected 1971 replacement costs, while it used the Marshall Valuation Service Manual in 1978 to appraise commercial property improvements which reflected 1976 replacement costs.

Both residential and commercial improvements are in the same legislative class for taxation purposes. Section 16-6-134, MCA. The protestors contend that the use of the disparate manuals has resulted in inequitable appraisals of property for taxation, the commercial properties being appraised at or near market value, while the residential properties are appraised substantially below market value.

It is DOR's constitutional duty to appraise, assess and equalize the valuation of all property taxed in the state in the manner provided by law. Article 8, Section 3, 1972 Montana Constitution. It is the duty of all taxing jurisdictions in the state to use the assessed valuation of property as established by the state. Article 8, Section 4, Montana Constitution. All taxable property must be assessed at one-hundred percent of its market value (with certain exceptions) and the Department of Revenue may not adopt a lower or different standard of value from market value when making the official assessment. Section 15-8-111, MCA. "Market value" is the value at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. Section 15-8-111 (2)(a) MCA.

We had a similar facet of this same problem before us in Department of Revenue v. State Tax Appeal Board, 1980, _____ Mont. _____, 613 P.2d 691, 37 St.Rep. 1063. In that case, the appeal arose from an order of the same district court which had approved STAB's blanket reduction of thirty-four percent on commercial improvement appraisals. We set aside STAB's blanket reduction and remanded the cause for further proceedings before STAB.

After remand, STAB issued a notice of August 26, 1980 to the litigants involved in this cause, of a hearing to be held on October 1, 1980. The notice stated:

> "The sole issue to be determined at this hearing is whether or not the Department of Revenue may lawfully use the 1972 Montana Appraisal Manual for the purpose of determining the value of residential improvements, and at the same time use the 1976 Marshall Valuation Service to determine the value of commercial improvements, when both residential

and commercial improvements are presently in Class 4 under Section 15-6-134 MCA, 1979, and both were in Class 11 under Section 15-6-112 MCA, 1978, in 1978. You are referred to the decision of the Montana Supreme Court in Department of Revenue of the State of Montana v. State Tax Appeal Board, Countryside Village, Inc., et. al., 37 St.Rep. 1063. The Montana Supreme Court in that case, at page 1067, adopted the criteria established by the Iowa Supreme Court for determination of unequal appraisals. The hearing will, therefore, be confined to the following evidence:

> "'(1) That there are several other properties within a reasonable area similar and comparable to his; (2) The amount of the assessments on these properties; (3) The actual value of the comparable properties; (4) The actual value of his property; (5) The assessment complained of; (6) That by a comparison his property is assessed at a higher proportion of its actual value than the ratio existing between the assessed and actual valuations of the similar and comparable properties, thus creating discriminations.'"

On September 10, 1980, the notice given to the litigants in this case was expanded by a memorandum addressed to all parties having tax protests. The expanded list included some forty-five taxpayers, and approximately sixty-one tax protests. The memorandum stated:

> "Each county will be heard separately, with the taxpayers presenting their case-in-chief first, and the Department of Revenue going second. Rebuttal will be permitted."

The memorandum also requested that any objections to the procedures be filed with the State Tax Appeal Board immediately.

On October 1, 1980, the time set for the hearing, the chairperson of STAB announced that the purpose of the hearing on that date would be to determine if, "the Board might find on such hearing that the Department's method is arbitrary, capricious, or otherwise unlawful", quoting from our Countryside decision supra, 613 P.2d, at 695. Counsel for

- 4 -

DOR did not specifically object to that method of procedure at the time, but did point out that STAB, at that time, had jurisdiction of "Countryside Village matter, PT-78-385;, the Colonial Inn case, PT-78-641; East Broadway, Inc., PT-78-65; James T. and Carol Harrison, PT-78-73; and Jerome T. Loendorf, PT-78-77," and that all the other cases were presently pending before district courts. The chairperson announced that nonetheless the hearing would proceed with respect to all the cases with the jurisdictional question "something that may have to be settled later".

The hearing then proceeded with the counsel representing various tax protestors from the various counties appearing. Proposed findings and conclusions were presented to STAB after the hearing, and on November 7, 1980 STAB made its findings, conclusion and order. It found that there was a disparity between the assessed values of residential and commercial improvements in the various counties, differing from county to county, but that commercial property was consistently appraised in an amount substantially higher than residential property. DOR had introduced no evidence to justify the disparity and STAB therefore concluded that the appraisal method used by the Department of Revenue violates uniformity, equal protection and due process requirements of the Montana Constitution and statutes, and was, therefore arbitrary, capricious and unlawful. It then entered the following order:

> "It is hereby ordered that the above matter be and it is remanded to the Department of Revenue for reappraisal of the commercial properties involved in a manner which does not violate the constitutional and statutory requirements for equalization or uniformity with other properties of the same legislative class. It is suggested that one method by which this may be accomplished is by

use of the Marshall Valuation Service Manual which reflects 1971 replacement costs."

DOR appealed the order to the District Court in Cascade County. There STAB's order was sustained and DOR's petition for judicial review dismissed, the District Court noting that no statute or regulation precludes STAB from requiring DOR to remedy its appraisals, nor from fashioning the remedy required in the order of November 7, 1980.

In its newest appeal to this Court, DOR contends, (1) that STAB proceeded improperly on remand in hearing all the tax protest cases collectively according to the county in which the property was situated; (2) that the evidence produced as a result of that procedure failed to conform to the standard of proof established by this court in Department of Revenue v. State Tax Appeal Board, supra. 613 P.2d 695; and (3) that the order rendered by STAB to DOR was in excess of STAB's statutory authority. The taxpayers respond that STAB's order is a proper exercise of its power, that evidence supports the findings of STAB and that its order is not arbitrary, capricious or otherwise erroneous.

Further substantive issues are DOR's contention that the evidence is insufficient to sustain STAB's order of November 7, 1980, and the taxpayers contention that since this issue is not briefed and argued before the District Court, it may not be raised in appeal.

Before determining the legal issues herein, we turn now to recap the evidence educed at the October 1, 1980 hearing before STAB.

Yellowstone County

We glean from STAB's expanded Notice of Hearing that there are eight protesting taxpayers in Yellowstone County,

- 6 -

comprising eleven cases. On behalf of these tax protestors, a single witness testified, Gene Thornquist.

Thornquist testified that he conducted a study to determine the ratio between DOR's appraisal of residential improvements and the market value of those residential improvements. He used the records of Multiple Listing Service in Billings concerning 1,242 residential sales in 1978. To determine the value of the improvements in each instance, he assumed that the land had been fairly appraised by DOR and so subtracted the appraised land value from the sales price, in each instance, so that presumptively in each category, the DOR appraisal and the sales price, he was dealing only with the value of the improvements. He determined in each of the 1,242 instances the ratio between DOR's appraisal of the residential improvements and the sales price of the residential improvements. He also added up all of the figures in each category so as to reach a total for all of DOR's appraisals of the residential improvements, and for all of the sales prices for the same residential improvements. Using this methodology, he reached the following mathematical conclusions:

Residential:

| | |
|---|---|
| Total DOR Value of Improvements | $26,123,047 |
| Total Sales Value of Improvements | $57,601,230 |
| Ratio DOR Value/Sales Value | 45.35% |

In addition, Thornquist testified to the number of sales based on various percentages of DOR's appraised value of the improvements. That effort resulted in the following figures:

Residential Properties:

| % of DOR Value | No. of Sales |
|---|---|
| 0 - 19.9% | 16 |
| 20 - 29.9 | 18 |
| 30 - 39.9 | 295 |
| 40 - 49.9 | 476 |
| 50 - 59.9 | 284 |
| 60 - 69.9 | 75 |
| 70 - 79.9 | 6 |
| 80 - 89.9 | 2 |
| 90 - 100 | 0 |
| | 1,242 |

Thornquist also had made a study of forty commercial improvements to realty. He used DOR's appraisals, subtracting its land value, to obtain DOR's value of the improvements for taxation purposes. For twenty-eight of the commercial properties he used construction costs for fair market value, for six he used actual sales prices, and for the remaining six he used certified appraisals which he had obtained. Not all of the figures used derived from the year 1978, although most did. He deducted DOR's appraisal of the land to determine the value of the improvements for the purposes of his study. All six of the certified appraisals of the commercial improvements were substantially below DOR's appraised values, resulting in ratios ranging from one-hundred three percent to two-hundred twenty-one percent. Thornquist totaled DOR's appraised value of the improvements in comparison to his determined sale value of those same improvements, which resulted in the following figures:

Commercial:

| | |
|---|---|
| Total DOR Value of Improvements | $24,912,920 |
| Total Sales Value of Improvements | $25,321,128 |
| Ratio DOR Value/Sales Value | 98.39% |

On the basis of these figures, Thornquist concluded that the average difference between DOR appraisals of commercial and residential improvements as to their respective market values, was 53.04 percent.

### Cascade County

Robert P. Goff, one of counsel representing Countryside Village in this case, was the principal witness with respect to the claimed disparities in Cascade County. His method of determining the difference in ratios between sales price and the DOR appraisal of commercial properties, and sale price and the DOR appraisal of residential properties, followed the same pattern as that described by witness Thornquist. From the Multiple Listing Service in Great Falls, Goff took the first 200 sales for 1978 in residential properties and compiled the figures for the same. He discounted the land value both for the DOR appraisal and the sales price before deducting therefrom the appraisal figure set by the DOR. The results of his study are tabulated as follows:

COMMERCIAL

| | | |
|---|---|---|
| Total App. Value of Imp. | $ 730,030 | |
| Total Sale Value of Imp. | $1,134,965 | Ratio 64.32% |
| Total of Individual Ratios | 1161.81 | |
| Average of Ratios | | 64.54 |

RESIDENTIAL

| | | |
|---|---|---|
| Total App. Value of Imp. | $3,202,994 | |
| Total Sale Value of Imp. | 8,197,867 | Ratio 39.07% |
| Total of Individual Ratios | 7619.61 | |
| Average of Ratios | | 38.29% |

COMP. OF COMM. & RESIDENTIAL RATIOS

| | | |
|---|---|---|
| Residential Ratio | 39.07% | |
| Commercial Ratio | 64.32% | 60.74% |
| | (100% - 60.74% = 39.26%) | |

| Average Residential Ratio | 38.29% | |
|---|---|---|
| Average Commercial Ratio | 64.54% | 59.33% |
| | (100% - 59.33% = 40.67%) | |

Goff also testified that he examined six different commercial properties, all apartment buildings, applying first the Montana Manual, and then the Marshall-Swift Manual. By using the depreciation factors provided in each of those manuals, he determined, "a reduction factor required" of 39.9% in the case of the Montana Manual, and 35% in the case of the Marshall-Swift Manual. Goff did not identify the properties to which these specific comparisons were made, except that possibly one of those was a tax protestor in these several actions.

### Lewis & Clark County

The principal witness here was Vern Cougill. Cougill did not do an overall county study, but examined the sales of four commercial properties and compared those sales to an unspecified number of residential properties of similar age. He testified that as to residential properties he discerned a difference in valuation between the assessed valuation and the actual sales price of 31-34%. With respect to the commercial properties he reviewed, he found a disparity between the sales price and the assessed value of the commercial properties ranging from 47% to 80%, which he averaged at just 60%. He then divided 33% by 60% to determine that commercial properties were appraised 55% higher than the residential properties. As far as the record indicates, it does not appear whether Cougill subtracted the land values from the values of the improvements in making his determinations.

In addition, Mr. John A. Cooper testified on behalf of Diana Dowling, one of the tax protestors, respecting two fourplexes she owns. Cooper testified that in the case of the "Eastside property", there was a disparity between the DOR appraisal of land under the fourplex and a single family home next door. The fourplex land was assessed at $3,770 and the single-family home land was assessed at $2,250. In addition, with respect to sales of comparable residential properties, he found two properties which he considered applicable. After considering the sales prices of the two residential properties, and applying varying factors to make them compatible with the fourplexes, he determined that the values on the single-family homes were taxed approximately 30% less than were the fourplexes.

### Missoula County

Attorney Greg Hanson appeared on behalf of tax protestor Village Motor Inn. In a statement to STAB, he indicated that they were prepared to present evidence to compare the Village Motor Inn commercial property with residential properties in its immediate area, but because of the Board's ruling that it did not wish to hear the individual cases at the time of this hearing, he would simply join in the testimony presented by Yellowstone and Cascade Counties for the purposes of the hearing.

### Flathead County

Witness William C. Paullin testified in this instance. He relied on previous testimony presented in connection with tax protestors from Flathead County. His studies had lead him to the conclusion that the DOR appraisals of commercial property in Flathead County are very close to 100% of actual selling price of those properties, and in the case of

residential properties, the DOR appraisals are approximately 66% or 65.8% of the sales price of residential property in 1976. He found the 1978 ratio to be 48.2% on actual selling price. Over a full year, looking at commercial sales and residential sales data, he found that DOR appraised at 116.6% of their sales values in the case of commercial properties, and at 63.8% for residential properties.

In addition, John M. Heller testified with respect to Flathead County. Using a different methodology, he found that the composite ratio of disparity was 52.9%, compared to Paullin's testimony of 62-63%. He accounts for the difference because he excluded land values, whereas Paullin included land values in making his determinations.

Pondera County

Janice Hoppes presented testimony respecting a specific grain elevator in Conrad, that of the Equity Cooperative Association. Ms. Hoppes testified that she examined all of the residential sales in her area for the years 1976 to 1980, which totaled seven. From her investigation of the sales prices of these residential properties as compared to the DOR appraisals of the same, she determined, as an average, that the residential properties were assessed at 45% of their market values. With respect to elevators, she explained that she had to look about the state for sales of elevators in order to make a determination. She also explained that elevators are more likely to be valued on bushel capacity rather than any other factor.

Ms. Hoppes then testified that, since the residential ratios varied from 17-92%, she would drop the lowest and highest from her computations to determine an average of 40.8% discrepancy between DOR valuations and residential

- 12 -

market values. Using commercial property sale of elevators she determined the average sales price was 43.5 cents per bushel capacity, but that all eight elevators that she had examined were assessed at 214% of such average per bushel capacity. She also determined that elevators were assessed five times higher than residential properties, based on their respective market values.

In addition, under Pondera County, Charles L. Jacobson representing tax protestors, stated that the property with which he was involved had sold four months after the appraisal at $20,000 less than the DOR appraisal, for which his taxpayers were asking an adjustment.

### Madison County

Attorney Sam Hadden represented protesting taxpayers in Madison County, and made a statement for the record during the hearing before STAB on October 1, 1980. The attorney reported to the Board that a record had been made on his taxpayers' appeal on September 7, 1978, where the taxpayers had presented an appraisal report and testimony on the appraisal. The Board had ordered that DOR make a written response to their appraisal report and testimony by October 15, 1978. The taxpayer was then to have fifteen days after receipt of the Department's material in which to file a response. Since that time, nothing has been done by DOR, according to the attorney.

The attorney informed STAB that his taxpayers intend to stand on the record that had already been made, and since DOR had chosen not to respond, to formally ask that the record be closed insofar as his protestors were concerned. On that

basis, the Board ruled in accordance with Mr. Hadden's motion.

Untangling the Legal Issues

It is clear that STAB has not fully appreciated the purposes for which we remanded the proceedings to it in our decision of Department of Revenue v. State Tax Appeal Board, supra, 613 P.2d at 695. It is true that we said that at the next hearing STAB, "might find at such hearing that the Department's appraisal method is arbitrary, capricious or otherwise unlawful. . .". However, we also continued:

> "If, upon a further hearing, the Board finds the Department's appraisal procedure arbitrary, capricious or unlawful and that a reduction in the appraisals of commercial property is justified, proof of an excessive appraisal must be made by each taxpayer who seeks relief. (citing authority) Each taxpayer should follow the above criteria to establish the amount of reduction the taxpayer is entitled to. This does not mean each taxpayer seeking relief must introduce evidence as to the value of all improvements to real property in a county. The taxpayer must, however, introduce evidence of enough property located near the taxpayer's property and in the same legislative classification so the Board can establish the proper true value to the assessed value ratio for the property without speculation or conjecture. (citing authority) Once the proper ratio has been established, the Board can determine the proper amount to reduce an individual taxpayer's property by applying the ratio to the property."

Moreover, STAB's authority to affirm, reverse or modify any appraisal made by DOR applies only to such protests as are properly before it. If there are protestors whose causes are before the District Court, or not yet before STAB, of course STAB has no authority with respect to those protests until such time as jurisdiction is properly acquired by STAB.

It is well to keep in mind the statutory scheme for protest of assessments or valuations in property tax proceedings. The County Tax Appeal Board is the first

- 14 -

jurisdictional level for considering protests by taxpayers to assessments, classifications or appraisals. Section 15-15-101. Challenges to an assessment procedure adopted by the Department of Revenue apply only to taxpayers protesting the assessments, and do not apply to all similarly situated taxpayers unless an action is brought in District Court as provided in Section 15-2-307 et seq MCA. Section 15-15-102. MCA.

Any person aggrieved by the action of the County Tax Appeal Board may appeal to the State Tax Appeal Board under Section 15-15-104, MCA.

Appeals from the County Tax Appeal Board to STAB are governed by Section 15-2-301. The power of STAB in connection with any appeal under Section 15-2-301(4), MCA is to "affirm, reverse or modify any decision" of the County Tax Appeal Board. Although STAB is not a quasi-judicial board, as that term is defined in our statutes, we recognized in Department of Revenue v. Burlington Northern, Inc., (1976) 169 Mont. 202, 545 P.2d 1083 that it could exercise quasi-judicial functions. STAB, however, as an administrative agency, has no mandatory or injunctive powers over DOR, a separate administrative agency. As an administrative agency, STAB has no constitutional or statutory judicial power to remand a matter to the Department of Revenue for reappraisal. When an appeal is taken under Section 15-2-301, MCA, STAB may only affirm, reverse or modify the decision of the County Tax Appeal Board.

The statutory procedures for the determination of tax protests must be followed, and in this case they require that STAB proceed to take evidence with respect to the individual protestors to determine if their individual properties have

been overvalued in accordance with the criteria which we adopted from Maxwell v. Shivers (1965), 257 Iowa 575, 133 NW.2d 709, 711; Department of Revenue v. State Tax Appeal Board, 613 P.2d, at 695. Based on that evidence, in protests over which STAB now has jurisdiction, it may affirm, modify or reverse the decision of the County Tax Appeal Boards.

With respect to those cases which may have passed beyond STAB's jurisdiction and are now presently being reviewed in district courts, STAB of course has no power to make determinations until and if those cases are returned for further proceedings before it.

We have no clear record of what the status of the Madison County property is, relating to protestor Big Sky. If STAB has present jurisdiction of it, it has ordered the closing of the record in that case, and it should proceed to make a determination.

In the case of the Dowling property in Lewis & Clark County, if STAB has jurisdiction of those cases, the evidence presented at the October 1, 1980 hearing by counsel and by Ms. Dowling, creates a presumption of arbitrariness in assessing her property to which DOR is entitled to respond in a further hearing.

In the case of the elevator in Pondera County, that protestor has established a presumptive showing of arbitrariness, to which DOR is entitled to respond if STAB now has jurisdiction of that cause.

In the Missoula County case of Village Motor Inn, that tax protestor, through its counsel, has indicated its readiness to proceed on its individual case. If STAB has jurisdiction of that cause, an appropriate early hearing on that protest should be allowed by STAB.

- 16 -

We detect a certain amount of struggling for turf in these cases as between the State Tax Appeal Board and the DOR. The District Court noted this, indicating in its opinion that it was partially approving STAB's order for the reason that responsibility was being placed by STAB upon DOR, which apparently caused the difficulty in the first place. One of the members of STAB indicated by a special concurrence that he favored the procedure taken by STAB because it aided small taxpayers to avoid the cost of tax protest proceedings. That objective is commendable, but the statutes which relate to determinations of tax protests are mandatory upon us and upon STAB. We are convinced that the many cases now pending out of the 1978 appraisals will be more expeditiously handled if the statutory procedures are followed.

For this reason, the decision of the District Court refusing judicial review is reversed, and this cause is remanded to STAB for further proceedings in accordance with this opinion. Each party to this appeal shall bear its own appeal costs.

We find that the evidence in this case is insufficient, but not in the manner contended by DOR. It is insufficient because with respect to each protesting taxpayer, there is nothing of record to show that any single taxpayer has been discriminated against when compared to taxpayers in the same classification; nor has the dollar amount of such discrimination, if any, on which an adjustment could be founded as to any taxpayer. What is lacking in the record is the specific dollar amount of unequal valuation or discrimination applying to the individual protesting taxpayers. It is STAB's duty to determine the individual

effect of the discriminatory method of appraisal before STAB can affirm, modify or reverse the County Tax Appeal Board.

The taxpayers argue on appeal that insufficiency of the evidence was not briefed or argued by DOR in the District Court and so that issue is unavailable to DOR on this appeal. Nonetheless, the same issue is reached on a ground raised by DOR in the District Court—namely, that STAB failed to follow our directions on remand of Countryside Village, supra, 613 P.2d at 695.

_John le. Sheehy_
Justice

We concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_Daniel J. Shea_

_Fred J. Weber_

_L.C. Gulbrandson_
Justices

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

I respectfully dissent.

I believe that within the Board's statutory powers to "affirm, reverse or modify" decisions and to not give full effect to Department rules which are "arbitrary, capricious or otherwise unlawful," the Board may exercise quasi-judicial functions which encompass the power of remand.

Neither our previous decision in Department of Revenue v. State Tax Appeal Board, supra, or the statutory scheme set forth in Chapter 2, Title 15, MCA, precludes remand to the Department for reassessment of the involved properties.

Respondents ably carried their burden by showing that the Department has abrogated its constitutional duty to appraise, assess and equalize the valuation of all property taxed in the state.

Therefore, it should be incumbent on the Department to either (1) justify its discriminatory methods (which it did not do in the hearing before the Board) or (2) properly fulfill its duty by coming forward with an assessment method which treats respondents' properties in a manner similar to that of other properties within the same classification. The latter alternative is appropriately accomplished by means of remand.

Properties owned by taxpayers who did not protest the Departments use of a discriminatory assessment method should not be subject to reassessment. The unconstitutionality of the method employed does not void heretofore unchallenged assessments. See North Central Services, Inc. v. Hafdahl (1981), ____ Mont. ____, 625 P.2d 56, 60, 38 St.Rep. ____, ____.

I would affirm.

Justice

19